[No. 15567.   Department One.   January 3, 1920.]

AMERICAN IRON & WIRE WORKS, *Respondent,* v.
CASPER FISCHER and FISCHER AUTO BED &
CAMP COMPANY, *Appellants.*[1]

SALES (6)—PARTIES LIABLE—EVIDENCE—SUFFICIENCY. In an action on a contract for the manufacture of steel beds, assumed by a corporation organized by a person who ordered and paid for the first lot of beds, the company and not the individual is liable, where the orders were entered against the company and checks in partial payment were received from the company, with whom all the business was transacted.

SALES (143)—DAMAGES (113.)—PROSPECTIVE PROFITS—EVIDENCE—SUFFICIENCY. The prospective profits in a contract for the manufacture of steel beds for defendant are not proven with reasonable certainty where plaintiff, after testifying that he would have made a profit of about one dollar a bed, admitted on cross-examination that he had stated that he would not make any profit on the first order, but expected to make thirty to thirty-five cents a bed on future business, and the testimony was indefinite as to the number actually manufactured.

APPEAL (487)—DECISION—MATTERS DETERMINED WITH REMAND. Where the verdict was for the exact amount claimed on several causes of action, it is severable, and the supreme court on appeal can sustain the proof as to one cause of action and deduct the amount for a cause improperly submitted, and render judgment without ordering a new trial.

APPEAL (423)—HARMLESS ERROR—BURDEN TO SHOW PREJUDICE. Misconduct of a party is not ground for reversal, where the trial court found that no prejudice resulted, and there is nothing in the record to show the contrary.

Appeal from a judgment of the superior court for King county, Hall, J., entered July 2, 1919, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Reversed as to appellant Fischer; modified as to appellant company.

*Ryan & Desmond,* for appellants.
*Myers & Johnstone,* for respondent.

[1]Reported in 186 Pac. 877.

MACKINTOSH, J.—The respondent's complaint alleges for a first cause of action that it and the appellant Fischer, about March 18, 1918, made a verbal contract, the respondent agreeing to manufacture steel automobile beds for Fischer, to be delivered as ordered, and that Fischer made orders as follows: March 18, 1918, 500 beds at $3.10 each; May 9, 1918, 1,000 beds at $4.15 each; and May 22, 1918, 4,000 beds at $4.15 for smaller beds and $5.15 for the larger beds; that the appellant company was organized May 27, 1918, and shortly after its incorporation assumed the contract and agreed to comply with its terms; that, between March 18, 1918, and October 30, 1918, the respondent, pursuant to the agreement, delivered to the appellants 2,081 beds at $8,900.83; also, that, on May 22, 1918, at the time of receiving the order for 4,000 beds, the respondent, at the request of the appellant Fischer, ordered and purchased steel for the appellants, a portion of which steel was consumed in the manufacture of the beds, and that the reasonable value of the steel was $4,363.84, which the respondent paid and advanced for the appellants. The complaint states that the sum of $5,001.30 has been paid on account of the automobile beds and $1,775 on account of the steel, and there remains a balance due the respondent, on account of the beds and steel, of $6,488.37.

The respondent's second cause of action alleges that, after the completion of the 2,081 beds, the appellants repudiated the contract and refused to accept any more beds, which resulted in the loss to the respondent of profits in the sum of $1 per bed on 3,419 beds, and asks, in the second cause of action, for judgment for that amount.

The appellant Fischer, by answer, generally denies the material allegations of the complaint and affirmatively pleads that, relying upon the respondent's repre-

sentations that it had the necessary plant and equipment to manufacture the beds in a satisfactory manner, he placed an order with the respondent for 501 beds, and that, on May 9, he and certain associates incorporated the appellant company, and that from the day of its incorporation all business relating to the manufacture of the beds was between the corporation and the respondent, and that he, personally, had no further business relations with the respondent, except as an officer of the corporation, and that all sums which he personally owed to respondent had been fully paid. The company's answer admits that, upon its incorporation, it assumed and agreed to comply with all contracts theretofore entered into between the respondent and appellant Fischer, but denies that Fischer had, prior to the incorporation, ordered any beds in excess of 501, and denies that respondent manufactured and delivered 2,081 beds, or any number in excess of 1,229, and denies that the value of the beds was in excess of $5,657.48.

As a first affirmative defense, the corporation alleges that, in May, 1918, respondent falsely represented that there was a great shortage of steel necessary for the construction of the beds and that it would be necessary that steel be purchased and stored for future use, and represented that, not having sufficient funds to make the purchase of the steel, it requested the appellant company to advance the necessary money, it being agreed that the money advanced for the purchase of such steel as was necessary to be used in the beds would be credited to the appellant company's account upon beds as they might thereafter be ordered, and that, in pursuance of that agreement, the appellant company advanced to the respondent the sum of $1,500. It further alleges that the respondent purchased steel at more than the market price, and that the appellant

company notified the respondent that, on account of defective workmanship, it would not place any further orders for beds or accept any more of them. As a second affirmative defense, the company alleges that all of the beds manufactured and delivered by the respondent have been more than paid for and that there is a balance due appellant company of $1,138.82. As a third affirmative defense, the company alleges that the beds delivered were so improperly constructed that it was necessary to refinish and rebuild the same, at the cost of $1,608.93. As a fourth affirmative defense, the company alleges that it has expended $8,401.60 in advertising, which has been· rendered valueless by the fact that the beds furnished by respondent were defective and inferior in construction and therefore unsalable, and that orders placed with the company for beds have been cancelled, and agents have refused to perform their contracts of sale. This affirmative defense was abandoned by the company on the trial. The respondent generally denies all the affirmative matter in the answers of the appellants. Upon the trial, the jury returned a verdict for $9,907.37, the full amount prayed for by the respondent, against both appellants, from which both appeal.

Four of the grounds upon which reversal is sought which we will consider here are, (1) that appellant Fischer's motion for nonsuit should have been granted; (2) that the issue in regard to the purchase of steel should have been withdrawn from the jury; (3) that the verdict is excessive, in that there was no proof of damages under the respondent's second cause of action; and (4) misconduct of respondent entitling appellants to a new trial.

I.   The 501 beds, which it is admitted by appellants were ordered by Fischer individually, have been fully

paid for, and if the orders placed on May 9 and 22 are ones for which the appellant company is alone responsible, no judgment can be entered against Fischer in this case. The record shows that, on April 19, 1918, the articles of incorporation of the appellant company were executed and were filed with the secretary of state on May 9, 1919, and that certificate authorizing the commencement of business was issued on that date. In the time between the execution of the articles and their filing, the corporation had been doing business under its corporate name, for, on April 30, the corporation gave a check to the respondent in the sum of $500, which was signed by the corporate name and bore the name of the corporation conspicuously in two places. On May 1, respondent acknowledged receipt of this check in a letter addressed to the corporation. The shop records of respondent show an order for 501 beds on March 18, 1918, as sold to Fischer individually, and all the records of the respondent thereafter, that is, shop records, ledgers, statements of account and correspondence, in no place refer to Fischer individually, but wherever a name is used, the name of the corporation appears. When the order of May 9 was given, the order was opened in a new shop record, and this new record recites the order as being sold to the corporation. On May 20, the respondent received a check from the corporation for $1,241.30, and on May 21 a check for $1,000. The respondent, on May 21, gave a receipt for the $1,000 payment to the corporation, and the shop records for the last order showed the name of the corporation. All the originals and copies of statements of account rendered by respondent, some twenty-five or thirty, and bearing date from May 17 to September 23, are rendered to the corporation and not to Fischer individually. The respondent's ledger, which contained the only account of the re-

spondent with either of the appellants, is headed in the name of the corporation as successor to Fischer. The account on its face shows that it was originally opened in the name of Fischer, and that the name of the corporation was thereafter inserted above Fischer's name and the charges subsequently made against the corporation. The only testimony in the case that contradicts all these records, made by respondent itself, is the testimony of the respondent's manager that he did not know of the existence of the corporation. This testimony can have no weight, for, though it is an oral statement undisputed, it has to yield to the indisputable physical facts and conditions in the record, which are utterly at variance with it. The record which the manager himself made on receiving checks issued in the name of the corporation and endorsing them for payment, in writing to the corporation acknowledging receipt of the checks and in various other ways, is conclusive, and his bare statement that he had no knowledge of the existence of the corporation is not evidence of that fact. With the record in this condition, there was no liability on the part of Fischer individually which could be submitted to the jury for determination.

The motion for a nonsuit as to Fischer should have been granted.

II. The respondent claims that the steel was purchased through it for the appellants. The appellant company contends that it advanced the money to the respondent to purchase the steel for it to use in the beds. There being this dispute as to the character of the transaction, and evidence having been introduced by either side in support of its position, a question of fact was presented which was properly submissible to a jury, and there was no error in so submitting it. The instruction complained of, in which this issue was sub-

mitted to the jury, contained a proper statement of the law.

III.   There was no testimony in this case as to the cost to the respondent of the manufacture of the beds, nor the items which constituted that cost, and the respondent's sole testimony in regard to its profits was contained in the following questions and answers:

"Q.   How much profit was the plaintiff able to make on these beds if the order had been completed of those that were not completed.   How much of a profit on each bed would you make?   A.   A dollar a bed.   Q.   A dollar a bed?   A.   About a dollar a bed as shown by our cost sheets."

On cross-examination of respondent's manager, occurred the following:

"Q.   And didn't you say then in substance, 'Mr. Fischer, I did not expect to make a dollar off this order of beds, but what I do expect is that you are going to sell thousands and thousands of these beds, and I am after your future business, and if I can get your future business, I will make from thirty to thirty-five cents a bed.'   A.   Yes, I said that."

Upon that testimony the jury returned a verdict for the full amount claimed.   The testimony as to the loss of profits was so suppositive and postulatory that in law it could not be the foundation of a verdict.   The testimony was indefinite as to the number of beds actually manufactured and delivered, which would leave the number of beds upon which profits were to be figured in the same indefinite condition.   Although we are committed to the doctrine that prospective profits are recoverable, they must be proven with reasonable certainty, and the testimony here as to the prospective profits on an indefinite number of beds undelivered was supported by no degree of certainty.   *Bromley v. Heffernan Engine Works,* 108 Wash. 31, 182 Pac. 929.

The respondent, having failed in its proof of its

second cause of action, is not entitled to have included in the verdict the amount claimed in that cause of action. The jury having returned a verdict in this case which is severable, by reason of the fact that it was in the exact total of the amounts claimed under both the first and second causes of action, this court can segregate such verdict and subtract from it the amount which is in excess of that which has testimony to support it. In this respect the verdict in this case is not distinguishable from verdicts in those cases where separate causes of action have been pleaded and the verdict has been rendered on each cause of action separately, and does not fall into that class of cases where separate causes of action have been pleaded and the jury having returned a verdict in one amount which is less than the total claimed in the several causes of action, the appellate court is compelled to order a new trial for the reason that it cannot find from the verdict itself how much was included as damages on the cause of action of which there was no proof.

IV. It is claimed that the manager of respondent, during the trial, indulged in such conduct as to prejudice the appellants' case. This is a matter which the trial court was more capable of properly passing on than are we, and he, being familiar with all the actions complained of, has found, by failing to disturb the verdict, that no prejudice was occasioned, and as we cannot say from the record that therein his judgment was incorrect, his action will be final.

The action as to appellant Fischer will be dismissed and a judgment will be entered for the respondent against the appellant company for the sum of $6,488.37, the amount claimed in the first cause of action. The appellants will recover their costs in this court.

HOLCOMB, C. J., PARKER, MAIN, and MITCHELL, JJ., concur.