[No. 34052.   Department One.   October 17, 1957.]

LOUIS W. TROMPETER, *Respondent*, v. UNITED INSURANCE COMPANY, *Appellant*.[1]

[1]Reported in 316 P. (2d) 455.

*Murray & Hanna,* for appellant.

*Kimball & Clark,* for respondent.

FOSTER, J.—United Insurance Company appeals from a twenty thousand three hundred ten dollar judgment on a policy of accident insurance insuring respondent against total disability.[2]

The complaint alleged permanent total disability from the date of the accident. The prayer was for the accumulated monthly indemnity of one hundred dollars per month plus all future installments thereof.

Appellant's answer denied permanent total disability and pleaded a written release and payment as a complete accord and satisfaction, which respondent alleged lacked consideration and that appellant refused to pay otherwise.

---

[2]"If such injury . . . shall wholly and continuously disable the Insured [plaintiff] for one day or more, the Company [defendant] will pay indemnity at the rate of One Hundred ($100.00) Dollars per month, beginning with the first medical treatment during disability, so long as the Insured lives and suffers said total loss of time, . . ."

Upon trial, appellant contended that, if the jury found respondent permanently totally disabled as a result of the accident, recovery should be limited to the accumulated monthly installments. The verdict, however, was for the full present value of all future installments. Under the instructions, the finding of permanent total disability inheres in the verdict of twenty thousand three hundred ten dollars, for which amount judgment was entered.

On October 23, 1953, at the Chief Joseph Dam, a concrete form constructed of heavy timber, estimated to weigh from two to four tons, fell, knocking respondent from a fifteen-foot ladder on which he was working, pinning him underneath, and crushing the ladder. The efforts of a number of men with heavy pries were required to lift the form sufficiently to extricate the respondent.

Respondent sustained multiple injuries, the most prominent of which were seven broken ribs, bleeding and scarring of the lungs, a chip fracture of the right elbow, an ulnar nerve injury in the right arm with resulting weakness of the hand, a compression fracture of the third lumbar vertebra, sprained ligaments in the right knee, and resulting traumatic neurosis.

Continuously from the injury to the trial, respondent suffered from shortness of breath and pain upon breathing. After twice unsuccessfully attempting to resume the same employment, respondent was sent by his attending physician to a chest specialist in Spokane, who, because of the injury, removed the lower portion of respondent's left lung.

The attending physician testified that respondent had been totally and continuously unable to work since the accident, that his condition was permanent, and that no further improvement could be expected, but his condition would become progressively worse.

At the urging of his first attending physician, respondent returned to work December 7, 1953, but quit after a week because he was unable to do anything. Discouraged by his failure to recover, respondent procured a transfer to another physician by the industrial insurance division of the state department of labor and industries.

The second physician testified that he thought light work would speed recovery and particularly would be beneficial in treatment of the traumatic neurosis. He arranged with respondent's employer for light work, but even this was too much. His foreman constantly complained to the physician that respondent was unable to do anything. The doctor testified that respondent was unable to work during the interval from May 3, 1954 to July 30, 1954, and that it was a mistake to suggest it.

Further detail of respondent's disability is unnecessary to demonstrate that the evidence was amply sufficient to sustain a recovery for permanent total disability.

But the appellant urges upon us the argument that respondent's total disability was not continuous from the time of the accident on October 23, 1953, because he worked from December 7, 1953, to December 14, 1953, and from May 3, 1954, to July 30, 1954. This is a *non sequitor*. It is not correct to say that he worked during those two brief intervals, although he did receive pay. The proofs show that respondent did not work, and that he was physically unable to do so, and he should not be prejudiced for following his physician's directions in good faith.

Recently (November, 1956), the supreme court of Oregon had occasion to consider this precise question in an appeal by the same insurance company, *LaBarge v. United Ins. Co.* (Ore.), 303 P. (2d) 498, and approved the following paragraph from the decision of the supreme court of South Carolina in *Mann v. Travelers' Ins. Co.*, 176 S. C. 198, 179 S. E. 796:

"The appellant strenuously contends that the fact that plaintiff undertook to return to work and was able to perform a part of his duties and to draw his full salary for a time would preclude his recovery. The conduct of the plaintiff is highly commendable, as he showed that he was doing all he could to minimize the liability of the defendant. If the fact that the insured undertook to do his regular work, even when his final recovery was doubtful, would preclude recovery, it would encourage less scrupulous people to refuse to work so long as they could draw disability compensation."

The test is not whether the insured attempted to work and received full pay for a short period, but whether during that time he was, in fact, totally disabled. Other cases following the same rule are collected in the margin.[3] The proofs are overwhelming that during those two brief periods the respondent was totally disabled.

On November 16, 1953, appellant acknowledged receipt of its executed claim form from respondent covering the injury in question. A protracted correspondence ensued in which appellant claimed that respondent's disability was temporary. On March 10, 1954, nearly five months after the injury, appellant, by letter, offered $183.32 for a complete settlement of its liability, which respondent refused.

The policy provides:

"Upon request of the Insured and subject to due proof of loss all of the accrued indemnity for loss of time on account of disability will be paid at the expiration of each thirty days during the continuance of the period for which the Company is liable, and any balance remaining unpaid at the termination of such period will be paid immediately upon receipt of due proof."

While it still had not paid anything under the policy on July 8, 1954, appellant sent respondent a letter[4] itemizing

---

[3]*Berry v. United States*, 312 U. S. 450, 85 L. Ed. 945, 61 S. Ct. 637; *Morgan v. Aetna Life Ins. Co.*, 157 F. (2d) 527; *Rushing v. Travelers' Ins. Co.*, 113 F. Supp. 707; *Equitable Life Assurance Soc. of U. S. v. Davis*, 192 Okla. 429, 137 P. (2d) 548; *Hodgson v. Mutual Benefit Health & Accident Ass'n*, 153 Kan. 511, 112 P. (2d) 121; *Travelers' Ins. Co. v. Blake*, 176 Okla. 364, 55 P. (2d) 975; *American Cas. & Life Ins. Co. v. Mason*, 244 S. W. (2d) (Tex. Civ. App.) 691; *Murphy v. Mutual Life Ins. Co. of New York*, 62 Idaho 362, 112 P. (2d) 993; *Serven v. Metropolitan Life Ins. Co.*, 132 Neb. 637, 272 N. W. 922; *Harasymczuk v. Mass. Accident Co.*, 216 N. Y. Supp. 97, 127 Misc. 344; *Doyle v. N. J. Fidelity & Plate Glass Ins. Co.*, 168 Ky. 789, 182 S. W. 944.

[4]"Our Medical Department has just reviewed the above numbered file and have approved payment of your claim for disability benefits relative to injury sustained in accident which occurred October 23rd, 1953.

"Information contained in the file indicates that you were totally disabled from October 23rd to December 7th, when you returned to work. However, you worked until December 17th when you again became totally disabled until May 3rd, 1954. The file also indicates that you were hospital confined from October 23rd to October 31st. Therefore, the Medical Department have allowed 180 days total disability, and

the amounts then due, which, in addition to the six monthly installments of $100, included $66.66 for hospitalization under other policy provisions, a total of $666.66, which it offered to pay if respondents would execute its printed form of enclosed release styled "Proposition for Settlement."[5] This respondent signed and returned on July 19, 1954. Since then, appellant has steadfastly maintained there was a complete accord and, by payment of the amount of $666.66, a complete satisfaction. Respondent has always stoutly contended to the contrary.

Appellant makes no claim that it paid anything more than was then due respondent, and its counsel, with commendable candor, in the brief states:

---

eight days hospitalization, computed at a monthly indemnity rate, in accordance with Part Ten and Part Twelve of your insurance contract. In addition to the aforementioned benefits, they have approved eight days hospitalization as provided under Rider #288 which is attached to your policy.

"Attached is our Release in the amount of $666.66 which should be signed by you and returned to us in the enclosed self-addressed and stamped envelope.

"We wish to assure you as soon as the properly signed Release is a part of our file, that our draft in the stated amount will immediately be forwarded to you."

[5]"For the purpose of making a compromise settlement of all claims accruing to me under my Policy No. 714942-SL dated the 15th day of SEPTEMBER, 1952, by reason of disability sustained by me and the results thereof, of which said disability you have heretofore been notified, I hereby offer to accept the sum of SIX HUNDRED SIXTY-SIX AND SIXTY-SIX CTS. DOLLARS ($666.66) in full payment of all money indemnity now accrued or which may hereafter accrue to me or to any other person by the terms of said policy, and in full payment, satisfaction and discharge of each, every and all claims of every name, nature and description that I now have or either my estate, my heirs, assigns or beneficiary would or could have, now or in the future, under said policy, if this settlement had not been made; and in full satisfaction and discharge of all obligations under said policy on account of said disability and the results thereof, whether now known or unknown. The Company may accept this offer within ten days from its receipt, by mailing its check or draft to the address hereinafter given, which check or draft shall be sufficient tender.

"This agreement, if accepted, shall be binding upon my heirs, assigns and beneficiaries."

"It is true that the payment of a liquidated, undisputed, matured obligation does not furnish consideration for the release of any additional obligation."

█ The sums paid were then due under the plain policy terms and were liquidated. There was no consideration for any release of appellant's liability to respondent for his permanent total disability. *Meyer v. Strom,* 37 Wn. (2d) 818, 226 P. (2d) 218; *Graham v. N. Y. Life Ins. Co.,* 182 Wash. 612, 47 P. (2d) 1029; *Scott v. Missouri Ins. Co.,* 361 Mo. 51, 233 S. W. (2d) 660; *Continental Cas. Co. v. Johnson,* (C. C. A. 6th), 103 F. (2d) 199; *Kellogg v. Iowa State Traveling Men's Ass'n,* 239 Iowa 196, 29 N. W. (2d) 559; *U. S. Cas. Co. v. Vinson,* 83 Ind. App. 474, 149 N. E. 90; *DeSoto Life Ins. Co. v. Jeffett,* 210 Ark. 371, 196 S. W. (2d) 243.

█ There is an additional and compelling reason why this printed form and the payment of the amounts due were not an accord and satisfaction. Respondent had not then made claim for permanent total disability. To create an accord and satisfaction there must be a meeting of the minds, that is, there must be a claim by one party upon the other, and an agreement to settle that claim. A claim not made on July 19, 1954, could not, therefore, be the subject of accord and satisfaction. *Puget Sound Pulp & Timber Co. v. O'Reilly,* 239 F. (2d) 607 (C. C. A. 9th, 1956); *Meyer v. Strom, supra.*

█ Under the uniform business records as evidence act (RCW 5.45.020), appellant offered in evidence a discharge slip made by respondent's employer as evidence of lack of disability. We recently held in *Young v. Liddington,* 50 Wn. (2d) 78, 309 P. (2d) 761, that statute did not authorize the admission of records for such purpose.

Appellant's principal assignment of error must be sustained. Respondent's right of recovery herein is limited to the monthly installments of indemnity accrued at the time of trial, while the judgment includes not only the installments then due, but, in addition, the present cash value of all future installments for appellant's life expectancy. Respondent, on the other hand, contends that because the

appellant refused to pay the recurring installments of monthly indemnity, it completely repudiated its contract, and that the judgment is, therefore, justified under the theory of anticipatory repudiation of contract.

Appellant, however, did not completely repudiate its obligation, but, on the other hand, recognized that the contract was still in force, and defended respondent's claim on the ground that it had paid all amounts due, and that he released it from all liability.

■ The rule allowing recovery of all future damage before the time for performance has arrived is said to have originated in *Hochster v. De la Tour*, 2 El. & Bl., Q. B. 678, 22 L. J., Q. B. 455, 17 Jur. 972, 1 W. R. 469, 118 Eng. R. 922, which allowed a servant to recover full pay for a future term of employment because his employer renounced the contract in advance. The following sentence from 12 Am. Jur. 969, Contracts, § 391, summarizes the situation:

"An anticipatory breach of contract is one committed before the time has come when there is a present duty of performance, and is the outcome of words or acts evincing an intention to refuse performance in the future."

The English doctrine was transfused into the main current of American law by Chief Justice Fuller in *Roehm v. Horst*, 178 U. S. 1, 44 L. Ed. 953, 20 S. Ct. 780, and is now generally accepted in the United States and has been repeatedly recognized in Washington. We said in *McFerran v. Heroux*, 44 Wn. (2d) 631, 269 P. (2d) 815:

"This court has held on numerous occasions that, where a party to a contract repudiates the contract, either by a positive refusal to perform before performance is due or by putting it out of his power to perform, an action for damages brought immediately is not premature."

The history of the doctrine in this country, as applied in actions on insurance policies providing for recurrent periodical payments of money, puts the matter in proper perspective.

In 1923, *Federal Life Ins. Co. v. Rascoe* (C. C. A. 6th), 12 F. (2d) 693, sustained recovery of all future monthly payments for total disability, but this case was disapproved

by the United States supreme court in *Mobley v. New York Life Ins. Co.*, 295 U. S. 632, 79 L. Ed. 1621, 55 S. Ct. 876 (1935), in which that court said:

"Mere refusal, upon mistake or misunderstanding as to matters of fact or upon an erroneous construction of the disability clause, to pay a monthly benefit when due is sufficient to constitute a breach of that provision, but it does not amount to a renunciation or repudiation of the policy."

That view was reiterated the next year in *New York Life Ins. Co. v. Viglas*, 297 U. S. 672, 80 L. Ed. 971, 56 S. Ct. 615.

The cases are collected, and the law is well summarized, in 21 Appleman Insurance Law and Practice 358, § 12582, as follows:

"The great majority of decisions permit recovery under a disability policy only of installments accrued and unpaid at the time of commencement of the action; this rule applying even though the insurer may have denied liability and the insured sought recovery of all damages on the theory of anticipatory breach."

The difficulty is not with the law but in determining whether a particular breach is partial or total. Appellant's rejection of respondent's claim was upon the ground that by the accord and satisfaction it had fully discharged its obligations under the policy. While the refusal to pay the amounts due was a breach, it was not a complete repudiation which entitled respondent to recover at once, in a lump sum, all future installments.[6]

There must be a reversal of the judgment, but it does not follow that the parties must be put to the expense of another trial. It is familiar practice to reduce excessive verdicts when reached under the influence of passion or prejudice; but the power to reduce excessive verdicts is not dependent upon the showing of passion or prejudice.[7]

Rule on Appeal 16, 34A Wn. (2d) 23, as amended effec-

---

[6]We need not now consider other points raised by appellant respecting the correct rule of damages and the admissibility of evidence in cases of complete repudiation.

[7]*Mieske v. P.U.D. No. 1 of Cowlitz County*, 42 Wn. (2d) 871, 259 P. (2d) 647; *Anderson v. Dalton*, 40 Wn. (2d) 894, 246 P. (2d) 853; *Williams v. Spokane Falls & Northern Railway Co.*, 44 Wash. 363, 87 Pac. 491.

tive January 3, 1955 (formerly Rem. Rev. Stat., § 1737), which is as follows:

"Upon an appeal from a judgment or order, or from two or more orders with or without the judgment, the supreme court will affirm, reverse or modify any such judgment or order appealed from, as to any or all of the parties, and will direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had; and, if the appeal is from a part of a judgment or order, will affirm, reverse or modify as to the part appealed from. The decision of the court shall be given in writing, and no cause shall be deemed decided until the decision in writing is filed with the clerk. In giving its decision, if a new trial is granted, the court may pass upon and determine all the questions of law involved in the cause presented upon such appeal and necessary to the final determination of the cause. Without the necessity of taking a cross-appeal, the respondent may present and urge in the supreme court any claimed errors by the trial court in instructions given or refused and other rulings which, if repeated upon a new trial, would constitute error prejudicial to the respondent;"

authorizes this court to direct the entry of a proper judgment on appeal.

■ The amount is only a mathematical calculation and is authorized by the quoted rule and the following cases: *Crutcher v. Scott Publishing Co.*, 42 Wn. (2d) 89, 253 P. (2d) 925; *Ball v. Stokely Foods, Inc.*, 37 Wn. (2d) 79, 221 P. (2d) 832; *Essig v. Keating*, 158 Wash. 443, 291 Pac. 323; *Domke v. Ernst Brothers & Farnham*, 120 Wash. 358, 207 Pac. 1; *American Iron & Wire Works v. Fischer Auto Bed & Camp Co.*, 109 Wash. 279, 186 Pac. 877; *Meza v. Pfister Co.*, 54 Wash. 7, 102 Pac. 871.

The proofs are not seriously in dispute respecting the permanent total disability of the respondent. In the argument, appellant's counsel frankly conceded that the respondent was now totally disabled. By the terms of the policy, the appellant engaged to pay a monthly indemnity of one hundred dollars per month during the period of total disability. The proofs show that the respondent has been totally disabled from the time of the accident, October 23, 1953, until the time of the trial, for which the trial

court is directed to enter a judgment against the appellant, less a credit against this sum for the six months already paid, plus the two periods respondent was on payroll from December 7, 1953, to December 14, 1953, and from May 3, 1954, to July 30, 1954.

Thus full justice may be done to both parties. It is said to be unjust to put one to the expense and delay of separate actions for each installment as it accrues, but that is not the inevitable consequence of our decision, for the permanent total disability now found to exist will be presumed to continue in the absence of proof of change.

The law is stated in 21 Appleman Insurance Law and Practice 98, § 12211, as follows:

"The obtaining of a former judgment is prima facie evidence of continued disability. It is, rather, for the insurer claiming a cessation of disability to prove its allegation by a preponderance of the evidence."

On the other hand, if respondent's condition improves so that he may again earn his living as a carpenter in competitive employment, appellant's liability will and should terminate, but that again depends upon proof of recovery. (*Cf. Gange Lbr. Co. v. Rowley,* 326 U. S. 295, 306, 90 L. Ed. 85, 66 S. Ct. 125, note 15.)

Since both parties have each substantially prevailed here, each shall bear his own costs. *Lewis Pacific Dairymen's Ass'n v. Turner,* 50 Wn. (2d) 762, 314 P. (2d) 625.

The cause is remanded with directions to enter a judgment against the appellant for one hundred dollars a month from the time of the accident until the trial, against which appellant is entitled to a credit for the six months already paid and the two periods the respondent was on the payroll, that is, December 7, 1953, to December 14, 1953, and from May 3, 1954, to July 30, 1954.

HILL, C. J., MALLERY, FINLEY, and OTT, JJ., concur.

November 26, 1957. Petition for rehearing denied.