IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| DAWN HILL, formerly known as DAWN SPAIN-MACK, | ) ) ) | No. 81846-5-I |
| Appellant, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| JOSEPH MACK, | ) ) ) | |
| Respondent. | ) | |

BOWMAN, J. — Dawn Hill argues the trial court erred in refusing to quiet title to real property in her favor, finding she repudiated the contract committing Joseph Mack to buy out her interest in the property, and fashioning an equitable instead of a legal remedy. We conclude that the court did not err in quieting title in favor of Mack or by finding that Hill repudiated the parties' contract. But the trial court abused its discretion by granting Hill a remedy after she breached the contract. We affirm in part but reverse and remand to strike the court's order that the parties execute a promissory note secured by a deed of trust for a debt that Mack does not legally owe.

FACTS

Hill and Mack met in 2001 as coworkers in Minnesota. At the time, Hill was interested in purchasing property in Washington State and building a home for her and her six children. Ultimately, Hill found land in Lakebay, Washington.

Citations and pin cites are based on the Westlaw online version of the cited material.

Hill and Mack married in September 2001. In February 2002, Hill obtained financing to purchase the Lakebay property and build a home. Mack granted Hill a quitclaim deed releasing his interest in the property and establishing it as Hill's "separate property." For the rest of their marriage, Hill paid the mortgage on the property from a joint bank account that mostly Mack funded through direct deposit from his employer.

Mack and Hill separated in 2011. Mack continued to pay the mortgage for the property after their separation.[1] At first, Hill stayed at the Lakebay property and Mack moved out. In May 2013, Hill relocated and Mack moved back onto the property with one of Hill's sons.

In January 2014, Mack filed for divorce. Hill did not appear for the dissolution hearing and the court granted a decree by default. The dissolution decree awarded the Lakebay property to Mack. Hill appealed the decree.

While Hill's appeal was pending, she and Mack began settlement negotiations. Mack wanted "a clear title to my house" and Hill wanted half the equity from the house because "I put my time in and it was my house." On July 29, 2014, Hill and Mack reached an agreement and signed a "Civil Contract for the Divorce Settlement and Child Support between the parties of Joseph D. Mack and Dawn R. Spain(-Mack)." A notary public notarized the parties' signatures.

The contract required Mack to pay Hill $40,000.00 in "no more than 2.5 years['] time[ ] maximum, with an interest rate of 3% applied after the first 12

---

[1] During bankruptcy proceedings from 2007 through 2011, a bankruptcy trustee paid the mortgage by garnishing Mack's wages.

2

months," to buy out Hill's interest in the property.[2]  Mack agreed to pay "a minimum" of $1,333.34 "per month" for 12 months, followed by a minimum monthly payment of $1,373.34.  Once she received payment in full, Hill agreed to "sign off of her interest in [the property]."  The agreement also provided Hill "shall retain her full interest in the said property until payment is received in full."  The contract stated that payment in full was due by January 1, 2017.

Under a separate clause in the contract, Mack agreed to pay Hill child support of $500 per month for two of her six children until they either graduated high school or turned 18, whichever came last.  Mack also agreed to pay any court costs for Hill's name change.  The contract had no default clause.

Two days after signing the contract, Hill dismissed her appeal of the dissolution decree.  Mack made an initial payment of $1,400 to Hill on August 6, 2014 "for the quitclaim deed."  He made a second $1,400 payment on September 5, 2014.  Mack also made all of the support payments for those months.

In late October 2014, Hill served Mack with an eviction notice.  Mack also learned that Hill had listed the property for sale through a real estate agent.  At the time Hill served Mack with the eviction notice, he had made support payments for October but had not yet made a property payment.  After receiving the eviction notice, Mack quit paying under the contract because "I did not believe that if she was putting my house on the market that she had any intention of ever providing me with the quitclaim she had promised."

---

[2] Hill believed that $40,000 represented one-half of the equity in the property based on her research on Zillow.com, a real estate and rental marketplace website.

3

Hill learned that she could not lawfully evict Mack so she did not pursue the eviction notice. Instead, she waited until the January 2017 deadline passed for full payment under the contract and served Mack with a "Notice to Quit Premises," giving him 20 days to surrender possession of the property or face judicial proceedings for ejectment. Mack did not surrender the property. Hill then sued to quiet title to the Lakebay property in her favor, eject Mack from the property, and obtain a $24,000 judgment for unpaid child support with interest[3] under the contract.

Mack counterclaimed, asking the court to enforce the decree and quiet title in his favor. Mack asserted that the child support obligation should be modified "because one or both children resided with [him] during the period for which [Hill] is attempting to collect" and that he was "entitled to an equitable offset." He also asked that the court offset any judgment for Hill by the amount of a recently discovered United States Department of Housing and Urban Development (HUD) loan that Hill had secured with the Lakebay property. And finally, Mack asked for damages because Hill refused to sign the refinancing paperwork he prepared in 2017, "resulting in a higher interest rate and expense to [Mack] for the new mortgage."

The bench trial started in February 2019. Only Hill and Mack testified. Hill testified that she tried to evict Mack only after she asked him to make a payment toward the property in October and he refused. Mack testified that he refused to

---

[3] Hill's two sons both obtained general equivalency diplomas and turned 18 in 2016 and 2017 respectively, so she requested liquidated money damages with statutory 12 percent interest.

pay under the contract only after Hill tried to evict him and sell the property.

The trial court first issued a "letter ruling." It concluded that "as of July 29, 2014, Hill still held legal title" to the subject property, but "Mack still held equitable title to the subject property." The court dismissed Hill's complaint and quieted title in favor of Mack. The court determined that the civil contract between the parties was binding and that Hill tried to evict Mack before he refused to pay. The court concluded that Hill's attempt to evict Mack, coupled with her attempt to sell the property, "constituted anticipatory repudiation" of the contract and that Mack "was therefore excused from performing according to its terms." The court denied Mack's request to order damages related to refinancing and to modify child support. The court ordered Mack to "pay $21,625 in past-due" support and to pay Hill $37,200 for the property, "less any amount required to pay off Hill's HUD loan," under a schedule much like that in the parties' July 2014 contract. The court denied Hill's request for fees and costs and awarded Mack statutory fees and costs as the prevailing party.

Hill moved the court to reconsider and the court granted the motion. After more briefing and argument, the trial court revised its ruling and entered extensive findings of fact and conclusions of law. The court concluded that "Mack retained full title to the Subject Property that was granted to him by the divorce decree." It also determined that the evidence supported "an objective manifestation of the parties' intent to create a binding contract" and that "the objective of the parties was for Hill to acquire an equitable mortgage in the Subject Property."

5

The court again determined that Hill repudiated the contract when she tried to evict Mack and placed the property for sale, which "excused" Mack "from performing according to [the contract's] terms." The court recognized that the contract "did not contain any provisions for default" and imposed "an equitable lien on the subject property in Hill's favor, in the amount of $58,825."[4] It ordered that "a condition precedent before any lien will encumber the Subject Property is" that Hill must provide proof she has satisfied the HUD loan she secured against the property. Rather than issue a monetary judgment in favor of Hill, the court ordered that "[a]fter the [HUD] Payoff Balance is produced, Mack will execute a Promissory Note, secured by a Deed of Trust, in favor of Hill for $58,825 to be recorded against the Subject Property," and set out a payment plan much like the July 2014 contract to be included in the promissory note. The court denied Hill's request for attorney fees and costs and granted Mack statutory fees and costs of $200 as the prevailing party.

Hill appeals.

ANALYSIS

Hill argues the trial court erred in quieting title in favor of Mack. She also challenges the trial court's determination that she repudiated the parties' contract and contends that the trial court should have issued a monetary judgment in her favor rather than order a promissory note secured by a deed of trust as her remedy.

---

[4] This amount appears to reflect the sum of $21,625, the amount the court determined Mack owed as child support under the contract; and $37,200, the amount the court determined Mack owed as payments toward the Lakebay property under the contract.

<u>Quiet Title</u>

Hill concedes that Mack holds legal title to the Lakebay property but claims the parties' civil contract conveyed her "superior equitable title." We disagree.

RCW 7.28.010 provides, in pertinent part, "Any person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by [a quiet title] action in the superior court of the proper county." An action to quiet title is equitable and designed to resolve competing claims of ownership. <u>Kobza v. Tripp</u>, 105 Wn. App. 90, 95, 18 P.3d 621 (2001).

> An action to quiet title allows a person in peaceable possession or claiming the right to possession of real property to compel others who assert a hostile right or claim to come forward and assert their right or claim and submit it to judicial determination.

<u>Kobza</u>, 105 Wn. App. at 95. The plaintiff in an action to quiet title "must succeed on the strength of [her] own title and not on the weakness of [her] adversary." <u>Magart v. Fierce</u>, 35 Wn. App. 264, 266, 666 P.2d 386 (1983).

Hill argues that the parties' July 2014 contract "reveals an intent to form a real estate contract" and "clearly asserts that title to the property would belong to [her], pending payment of a specified amount on a specified schedule." She concedes that the contract "is not sufficient to effect a conveyance of property" but asserts this is so only because the contract does not include a legal description of the land.[5] Hill argues, "In a circumstance such as this, although

---

[5] "[A] contract for the sale of real property which does not contain a correct legal description of the property violates the statute of frauds." <u>Key Design Inc. v. Moser</u>, 138 Wn.2d 875, 876, 983 P.2d 653 (1999).

7

legal title cannot be conveyed due to deficient documentation, there is a conveyance of equitable title."

Hill cites Fledishbein v. Thorne, 193 Wash. 65, 74 P.2d 880 (1937), in support of her argument. In Fledishbein, the plaintiff purchased a mortgage attached to property owned by his sister. Fledishbein, 193 Wash. at 66. Fledishbein agreed to release his mortgage so his sister could offer the property as collateral for a bank loan. Fledishbein, 193 Wash. at 66-67. In turn, his sister agreed to give Fledishbein a second mortgage on the property after the loan was approved. Fledishbein released his mortgage and his sister obtained her loan. Fledishbein, 193 Wash. at 66-67. But his sister died before she gave Fledishbein the second mortgage. Fledishbein, 193 Wash. at 67. Fledishbein submitted a claim against his sister's estate for the amount of his mortgage, and the executor denied the claim. Fledishbein, 193 Wash. at 67. The trial court concluded Fledishbein had a right to recover from his sister's estate. Fledishbein, 193 Wash. at 67-68. The Supreme Court affirmed, determining that their agreement to secure her debt to him with a second mortgage " 'operates as an equitable mortgage according to the maxim that equity regards that as done which ought to be done.' " Fledishbein, 193 Wash. at 74, 72 (quoting 19 RULING CASE LAW Mortgages § 46, at 275 (1917)).

Hill argues that this case is like Fledishbein because the terms of the July 2014 contract would have passed title to her but for a technical defect. Hill misconstrues the language of the contract. When interpreting contracts, we determine the parties' intent by "focusing on the objective manifestations of the

8

agreement, rather than on the unexpressed subjective intent of the parties."
Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262
(2005).  Here, under the contract, Hill "will sign off of her interest" in the property
"at the time of the payment in full from" Mack.  And Hill "shall retain her full
interest in the said property until payment is received in full from Mr. Mack."
"Interest" is different from "title."[6]  See State v. Wooten, 178 Wn.2d 890, 896, 312
P.3d 41 (2013) (a party can possess " '[some] thing less than exclusive
ownership' " in real estate)[7] (quoting RCW 9A.48.010(1)(c), defining "property of
another"); In re McDaniel, 89 B.R. 861, 866 (Bankr. E.D. Wash. 1988)
(discussing difference between "security interest" and "legal title").  The language
in the contract here does not reveal an intent to create a real estate contract
passing title to Hill as she asserts.  Instead, it calls for a $40,000 "buyout" of Hill's
"interest" in property owned by Mack.  The trial court did not err in quieting title in
favor of Mack.

 Repudiation of the Contract

Hill challenges the trial court's finding that she tried to evict Mack before
he refused to pay under the contract as not supported by substantial evidence.
Hill also argues that the court erred in concluding that she repudiated the
contract because "[t]he issuance of a notice to pay or vacate does not reveal
intent by [her] that she would not be bound by the terms of the settlement

---

[6] Property interests include all benefits to which there is a " 'legitimate claim of entitlement.' " Durland v. San Juan County, 182 Wn.2d 55, 70, 340 P.3d 191 (2014) (internal quotation marks omitted) (quoting Conard v. Univ. of Wash., 119 Wn.2d 519, 529, 834 P.2d 17 (1992)).

[7] Alteration in original.

agreement" and because Mack breached the contract when he did not make a timely payment consistent with his "course of performance." We disagree.

Our review of a trial court's findings of fact and conclusions of law is a two-step process. Landmark Dev., Inc. v. City of Roy, 138 Wn.2d 561, 573, 980 P.2d 1234 (1999). First, we must determine whether substantial evidence in the record supports the trial court's findings of fact. Landmark Dev., 138 Wn.2d at 573. Substantial evidence requires a sufficient quantum of evidence in the record to persuade a reasonable person that a finding of fact is true. Pardee v. Jolly, 163 Wn.2d 558, 566, 182 P.3d 967 (2008) (citing Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)). If substantial evidence supports a finding of fact, we will not substitute our judgment for that of the trial court. Pardee, 163 Wn.2d at 566. Disputed evidence is still substantial if it is enough to persuade a reasonable person of its truth. See McCleary v. State, 173 Wn.2d 477, 514, 269 P.3d 227 (2012).

If we determine substantial evidence supports the court's findings, we must then determine whether those findings of fact support the trial court's conclusions of law. Landmark Dev., 138 Wn.2d at 573. We review conclusions of law de novo. Sunnyside Valley, 149 Wn.2d at 880. The parties' intentions are questions of fact, while the legal consequences of such intentions are questions of law. Pardee, 163 Wn.2d at 566 (citing Sunnyside Valley, 149 Wn.2d at 879).

A. Finding of Fact

Hill argues the trial court erroneously found that she tried to evict Mack before he refused to pay under the contract because it "ignored the uncontested

testimony that she requested payment from Mr. Mack before giving the notice, and that Mr. Mack refused."

At trial, Hill testified that she tried to evict Mack only after she asked him to make a payment toward the Lakebay property in late October and he refused. Mack testified that he refused to pay under the contract only after Hill tried to evict him and sell the property. The trial court found Mack's testimony to be more credible. We do not review the trial court's credibility determinations, nor can we weigh conflicting evidence. Quinn v. Cherry Lane Auto Plaza, Inc., 153 Wn. App. 710, 717, 225 P.3d 266 (2009). Substantial evidence supports the trial court's finding that Hill tried to evict Mack before he refused to pay.

B. Conclusions of Law

Hill argues that the trial court's findings cannot support its conclusion that Hill repudiated the contract because "[t]he issuance of a notice to pay or vacate does not reveal intent by [her] that she would not be bound by the terms of the settlement agreement." She also argues that Mack breached the contract before she tried to evict him because he failed to make a timely payment in October.

An anticipatory breach occurs when one of the parties to a bilateral contract either expressly or impliedly repudiates the contract before the time for the performance. CKP, Inc. v. GRS Constr. Co., 63 Wn. App. 601, 620, 821 P.2d 63 (1991). Repudiation must consist of a " 'positive statement or action by the promisor indicating distinctly and unequivocally that [they] either will not or cannot substantially perform any of [their] contractual obligations.' " Wallace Real Estate Inv., Inc. v. Groves, 124 Wn.2d 881, 898, 881 P.2d 1010 (1994) (en

11

banc)[8] (quoting Olsen Media v. Energy Scis., Inc., 32 Wn. App. 579, 585, 648 P.2d 493 (1982)); Lovric v. Dunatov, 18 Wn. App. 274, 282, 567 P.2d 678 (1977). A person's conduct may expressly assert or circumstantially manifest an intent to repudiate. CKP, Inc., 63 Wn. App. at 620 (citing Hemisphere Loggers & Contractors, Inc. v. Everett Plywood Corp., 7 Wn. App. 232, 234, 499 P.2d 85 (1972)). Whether a party establishes facts showing repudiation is a question for the finder of fact. See Wallace v. Kuehner, 111 Wn. App. 809, 814-15, 46 P.3d 823 (2002).

The record does not support Hill's assertion that her effort to evict Mack showed "a clear step that she wished to enforce the terms of the settlement agreement." The trial court found that "in October 2014, Hill served Mack with eviction papers and placed the Subject Property on the market." We treat the trial court's finding as a verity because Hill did not challenge it on appeal. Harris v. Urell, 133 Wn. App. 130, 137, 135 P.3d 530 (2006). Serving Mack an eviction notice and listing the Lakebay property for sale went against Hill's obligation under the contract to execute a quitclaim deed upon receipt of Mack's $40,000 "buyout." Hill's conduct caused Mack to "believe that if she was putting my house on the market," then she did not have "any intention of ever providing me with the quitclaim she had promised." The court properly concluded that "Hill's serving of eviction papers and putting the Subject Property up for sale was circumstantial evidence of her intent to repudiate the Settlement Agreement."

---

[8] Internal quotation marks omitted.

Hill also argues that Mack breached the July 2014 contract before her efforts to evict him by failing to make a timely payment in October. But the parties agree that the contract did not proscribe a specific day of the month on which payment was due. Without a supporting legal analysis, Hill cites Spradlin Rock Products, Inc. v. Public Utility District No. 1 of Grays Harbor County, 164 Wn. App 641, 266 P.3d 229 (2011), to argue for the first time on appeal that Mack established a "course of performance" by paying on either the 5th or 6th day of the previous two months, breaching the contract when he failed to pay by the 6th of October.[9]

Generally, we will not consider issues raised for the first time on appeal. RAP 2.5(a); see Karlberg v. Otten, 167 Wn. App. 522, 531-32, 280 P.3d 1123 (2012) ("A failure to preserve a claim of error by presenting it first to the trial court generally means the issue is waived. While an appellate court retains the discretion to consider an issue raised for the first time on appeal, such discretion is rarely exercised.") (citing Bellevue Sch. Dist. No. 405 v. Lee, 70 Wn.2d 947, 950, 425 P.2d 902 (1967)). We decline to do so here.

Equitable Remedy

Hill argues that the trial court erred by refusing to enter a judgment in her favor. She contends that the "grant of injunctive relief against [her] was contrary

---

[9] U.C.C. section 1-303(a) provides:

A "course of performance" is a sequence of conduct between the parties to a particular transaction that exists if:
(1) the agreement of the parties with respect to the transaction involves repeated occasions for performance by a party; and
(2) the other party, with knowledge of the nature of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection.

to the pleadings and argument of the defendant." Because we conclude that Hill's repudiation of the contract released Mack from his obligation to perform, the trial court abused its discretion when it fashioned an equitable remedy for Hill.

"[A]n equitable remedy is an extraordinary, not ordinary, form of relief." Sorenson v. Pyeatt, 158 Wn.2d 523, 531, 146 P.3d 1172 (2006). We review the authority of a trial court to fashion equitable remedies under an abuse of discretion standard. See Sorenson, 158 Wn.2d at 531. "A court will grant equitable relief only when there is a showing that a party is entitled to a remedy and the remedy at law is inadequate." Sorenson, 158 Wn.2d at 531.

Here, the trial court concluded that "Hill is entitled to an equitable lien on the Subject Property in the amount of $58,825." An equitable lien is a remedy for debt found to be owed in law. See Ellensburg v. Larson Fruit Co., 66 Wn. App. 246, 252, 835 P.2d 225 (1992). "An equitable lien is neither a debt nor a right of property, but a remedy for a debt." Ellensburg, 66 Wn. App. at 252 (citing Nelson v. Nelson Neal Lumber Co., 171 Wash. 55, 61, 17 P.2d 626 (1932)).

Hill is not entitled to a remedy. The trial court determined that Hill repudiated the parties' 2014 contract binding Mack to pay Hill child support and to make payments toward a "buyout" of the Lakebay property. "Repudiation of a contract by one party may be treated by the other as a breach which will excuse the other's performance." CKP, Inc., 63 Wn. App. at 620; see also Hemisphere Loggers, 7 Wn. App. at 234 (citing Trompeter v. United Ins. Co., 51 Wn.2d 133, 316 P.2d 455 (1957); former 17 AM. JUR. 2D Contracts § 449 (1964)). And breaching the contract precludes the party from enforcing the contract against a

nonbreaching party. <u>Anderson Hay & Grain Co. v. United Dominion Indus., Inc.</u>, 119 Wn. App. 249, 256, 76 P.3d 1205 (2003). Because Hill repudiated the July 2014 contract, Mack owed her no legal debt and Hill was not entitled to a legal or equitable remedy. The trial court abused its discretion by imposing an equitable lien on Mack's property for a debt that he did not owe in law.

We affirm the trial court's order quieting title in favor of Mack, reverse its finding that Hill was entitled to an equitable lien, and remand to strike the court's order that the parties execute a promissory note secured by a deed of trust.[10]

Brennan, J

WE CONCUR:

_____  _____

---

[10] Because we conclude that the trial court abused its discretion in fashioning a remedy for Hill, we need not address Hill's argument that the trial court erred by failing to award her interest on the amounts Mack owed and by awarding Mack an offset for the amount of the HUD loan.