[No. 23874.   Department One.   December 28, 1932.]

ARVID J. NELSON *et al., Appellants,* v. NELSON NEAL
LUMBER COMPANY *et al., Respondents.*[1]

*Bundy & Swale, Tucker & Tucker,* and *Rummens &
Griffin,* for appellants.

*Pemberton & Robinson, Thomas Smith,* and *James G.
Smith,* for respondents.

HOLCOMB, J.—This action was brought by appellants,
as stockholders of the Nelson Neal Lumber Company,
a corporation, to recover on behalf of, and for the
benefit of, it and appellants from the other defendants
the proceeds of certain fire insurance which the second

[1]Reported in 17 P. (2d) 626.

amended complaint alleges was the property of the Nelson Neal Lumber Company and which the other defendants misappropriated.

The second amended complaint alleges the incorporation of the Nelson Neal Lumber Company, and that appellants were the owners of certain shares of its capital stock; that, prior to June 2, 1926, the Nelson Neal Lumber Company was the owner of a saw mill and certain timber lands and logging equipment; that, on about June 2, 1926, the defendants other than the Nelson Neal Lumber Company caused to be organized the Montborne Lumber Company, a corporation, and during all the times thereafter were the members of its board of trustees and in active charge, direction and control of its affairs; that, on June 2, 1926, the Nelson Neal Lumber Company entered into a certain contract, incorporated in the complaint as an exhibit, whereby the saw mill, logging machinery and equipment were sold to Montborne Lumber Company.

The saw mill, logging machinery and equipment were sold to the Montborne Lumber Company by contract of conditional sale dated June 2, 1926, whereby title to all of the property is reserved in the Nelson Neal Lumber Company until full payment of the purchase price. By paragraph 7 of the contract it was provided:

"That the vendee agrees to keep the said saw and shingle mill and all machinery therein including the buildings insured for the sum of at least Twenty Thousand Dollars, loss, if any, payable to the vendor, as its interest may appear."

The remaining allegations are:

"That as is more fully set forth in said Exhibit 'A' hereto attached, the said contract by Paragraph 7 thereof required that the said Montborne Lumber Company at all times keep the saw and shingle mill and machinery therein described insured against loss by

fire, which insurance should be made payable to the defendant Nelson Neal Lumber Company as its interest might appear, but that the said Montborne Lumber Company and the defendants Thos. Smith, Jas. G. Smith, F. F. Day and D. A. Daniels as trustees and managing officers thereof, refused and neglected to perform such provision of said contract, but wrongfully and unlawfully took out in the name of said Montborne Lumber Company insurance on said saw and shingle mill and machinery therein, but failed and neglected to have said insurance made payable to defendant Nelson Neal Lumber Company; that at all times said Nelson Neal Lumber Company and its officers and stockholders depended and relied upon the said defendant Thos. Smith to protect them in all matters pertaining to said contract, and were at all times without knowledge of the failure to have such insurance made payable as in said contract provided.

"That thereafter and on or about the 1st day of March, 1928, said saw and shingle mill being then in the possession of the Montborne Lumber Company under the terms of said contract, was destroyed by fire, and at the time of said fire the said buildings were insured in the amount of $36,000.00, and that said Montborne Lumber Company collected such insurance to the amount of $30,000.00.

"That at the time of their destruction as aforesaid, the said saw and shingle mill were the property of the defendant Nelson Neal Lumber Company and that notwithstanding the failure of the Montborne Lumber Company to have such insurance made payable to the Nelson Neal Lumber Company, as in said contract provided, the said sum of $30,000.00 paid to said Montborne Lumber Company upon said insurance, belonged to and was the funds of said Nelson Neal Lumber Company; and that the said Montborne Lumber Company and the said defendants Thos. Smith, Jas. G. Smith, F. F. Day and D. A. Daniels, being then and there in active charge and direction of the affairs of said Montborne Lumber Company, wrongfully, fraudulently and unlawfully misappropriated and converted the same.

"That thereafter and on or about the 1st day of June, 1928, and at about the time of the collection by

58

said Montborne Lumber Company of said insurance, the said Montborne Lumber Company purchased from the heirs and representatives of F. S. Neal a majority of the shares of the capital stock of said Nelson Neal Lumber Company, and thereupon caused to be elected as trustee of said Nelson Neal Lumber Company, the defendants Thos. Smith, Jas G. Smith and F. F. Day, and that ever since said time and until on or about the 15th day of September, 1930, said last named defendants have been all of the trustees of the defendant Nelson Neal Lumber Company, and have been in charge and direction of its affairs; and that during all of said time the said last named defendants unlawfully and fraudulently, and in total disregard of their duties and obligations as trustees of the Nelson Neal Lumber Company, have refused and neglected to collect said insurance money from said Montborne Lumber Company, but have wrongfully and fraudulently and in violation of the rights of these plaintiffs and of all other stockholders of said Nelson Neal Lumber Company, conspired with said Montborne Lumber Company to permit the latter to keep said insurance money.

"That prior to the commencement of this action, to-wit, on or about the 1st day of September, 1930, these plaintiffs demanded in writing of the defendant Nelson Neal Lumber Company, and of Thos. Smith, Jas. G. Smith and F. F. Day as trustees thereof, that Nelson Neal Lumber Company commence a suit against the said defendants Day and Daniels for the recovery of the indebtedness hereinbefore set forth, but that the said Nelson Neal Lumber Company has at all times refused and neglected and still does refuse and neglect to commence said action or to take any steps to collect said indebtedness, and that it is necessary for the protection of these plaintiffs and all other similarly situated that they prosecute this action."

The Montborne Lumber Company was not joined.

Respondents demurred to the second amended complaint upon five statutory grounds, one of which was that the complaint does not state facts sufficient to con-

stitute a cause of action, which is the only one we find proper to discuss.

The trial court sustained the demurrer, whereupon appellants elected to stand on the complaint, refused to amend, and the cause of action was dismissed. This appeal results.

Appellants assert that each and all of the personal respondents herein are liable as trustees and officers of the Montborne Lumber Company for the conversion for the benefit of that company of the $30,000 insurance money which were funds belonging to the Nelson Neal Lumber Company; and that respondents Smith and Day are also liable in that, as trustees and officers of the Nelson Neal Lumber Company, they permitted that conversion; that the last two are therefore doubly liable for liability for the same act.

Appellants forcefully insist that the conditional sales contract reserved title to all of the property to be insured under the contract in the Nelson Neal Lumber Company, the vendor; that it provided that the insurance should be procured by the vendee in the sum of at least $20,000, loss, if any, payable to the vendor as its interest might appear; and that, therefore, the insurance and the proceeds thereof belong to the Nelson Neal Lumber Company, of which the individual respondents were trustees who collected and appropriated it; that, consequently, the vendee, the Montborne Lumber Company, and its trustees collected and misappropriated the proceeds of that insurance and were guilty of conversion.

These parties agree that the insurance provision in the conditional sales contract is governed by the same principle of law as if it were a provision in a mortgage, because the purpose of the provision in each instrument is the same. *Stebbins v. Westchester Fire Insurance Co.*, 115 Wash. 623, 197 Pac. 913. Appel-

lants, however, erroneously insist that the Nelson Neal Lumber Company at all times had legal title to the insurance money, because it had legal title to the property burned. That premise is fallacious.

"It is well established that if a mortgage contains a covenant or condition that the mortgagor shall keep the premises insured for the benefit of the mortgagee, and the mortgagor takes out a policy in his own name and does not assign it or make it payable to the mortgagee, and a loss occurs, such a covenant creates an equitable lien in favor of the mortgagee to the extent of his mortgage interest upon the money due under the policy, and this too, even if the mortgage contains also a provision that the mortgagee, in default of an insurance by the mortgagor, may effect an insurance at the expense of the mortgagor." *Hyde v. Hartford Fire Ins. Co.,* 70 Neb. 503, 97 N. W. 629, 113 Am. St. 796.

To the same effect are: *Wheeler v. Insurance Co.,* 101 U. S. 439; *Wayne National Bank v. National Bank of La Grange,* 197 N. C. 68, 147 S. E. 691; *Chipman v. Carroll,* 53 Kan. 163, 35 Pac. 1109, 25 L. R. A. 305; *Northwestern Fire & Marine Ins. Co. v. New York Life Ins. Co.,* 238 Ky. 229, 37 S. W. (2d) 67; 14 R. C. L. 1367.

An examination of the above cited cases discloses that they cite many other apt cases.

Since it must be concluded that the Nelson Neal Lumber Company could have nothing more than an equitable lien on the insurance proceeds, it becomes proper to define the nature of an equitable lien.

" . . . it is a right of a special nature over property, constituting a charge or incumbrance thereon, so that the property itself may be proceeded against in an equitable action, and be either sold or sequestered upon proof of a contract out of which the lien could grow, or of a duty on the part of the holder of the property, so as to give the other party a charge or lien upon it. . . . while such a lien may be thus susceptible of en-

forcement, it is, nevertheless, but a mere floating and ineffective equity until such time as a judgment or decree is rendered actually subjecting the property to the payment of the debt or claim." *Langford v. Fanning*, 7 S. W. (2d) (Mo. App.) 726.

"An equitable lien is the right to have property subjected in a court of equity to the payment of a claim. . . . It is neither a debt nor a right of property but a remedy for a debt. It is simply a right of a special nature over the property which constitutes a charge or incumbrance thereon, so that the very property itself may be proceeded against in an equitable action and either sold or sequestered under a judicial decree and its proceeds in one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists." *Kukuk v. Martin*, 331 Ill. 602, 163 N. E. 391.

To the same effect are: *Johnson v. Bush Lumber Co.*, 258 Mich. 306, 241 N. W. 819; *Milam v. Milam*, 138 Tenn. 686, 200 S. W. 826; 37 C. J. 308.

The court of appeals of New York in *McCoy v. American Express Co.*, 253 N. Y. 477, 171 N. E. 749 (Opinion by Cardozo, C. J.), held that a plaintiff suing for conversion must show violation of possession or right to present enjoyment of possession; that the right to an equitable lien which could be specifically enforced is insufficient to maintain action for conversion of goods covered by such lien; that, without violation of a possessory right, a wrong to the property, whatever it may be, cannot constitute conversion. To the same effect are the *Johnson* and *Langford* cases, *supra;* and *Nave-McCord Mercantile Co. v. Ranney*, 29 Fed. (2d) 383. In the last cited case, the court unequivocally said: "An equitable title or right is not enough to support an action for conversion."

See, also, 37 C. J., *supra.*

Compare *Davin v. Dowling*, 146 Wash. 137, 262 Pac. 123.

Appellants argue and cite authorities to sustain their argument to the effect that the insurance money was a trust fund for their benefit; and that equity, under the well established principle of treating as done that which should have been done, established a lien on such proceeds in their favor. Among other cases to that effect, citing *Houston Canning Co. v. Virginia Can Co.*, 211 Ala. 232, 100 So. 104, 35 A. L. R. 912; *In re Sands Ale Brewing Co.*, 21 Fed. Cas. 351; *First National Bank v. Commercial Union Assur. Co.*, 40 Ida. 236, 232 Pac. 899.

All of the cases cited by appellants have been examined, but a complete analysis of all of them would unduly extend this opinion. A few, only, will be reviewed. For example, the case of *In re Sands Ale Brewing Co., supra,* a bankruptcy matter, stated that the petitioner there claimed that a covenant in a trust deed "gave him an equitable lien upon the proceeds of the insurance," to the exclusion of the general creditors. Manifestly, that case was one to establish and enforce an equitable lien upon the insurance proceeds. Another case, strongly relied upon by appellants, the *Houston Canning Co.*, case, *supra,* was, as stated in the very beginning of the opinion, a bill in equity to establish and enforce such an equitable lien.

In another case cited, *Smith & Furbush Mach. Co. v. Huycke,* 72 Okla. 30, 177 Pac. 919, it was distinctly held that the terms of the conditional contract of sale, similar to that before us, "created an equitable lien" in favor of the vendor upon the proceeds of the insurance. Another case relied upon by appellants, *Bluefields S. S. Co. v. Lala Ferreras Cangelosi S. S. Co.,* 133 La. 424, 63 So. 96, was an action based upon a written contract of agency, in which members of the board of directors of the defendant company were impleaded, where it was clearly shown that one of the directors

had received the money directly from plaintiff and had diverted it with the knowledge and consent of another officer, the president, who, alone, were held liable. Such facts clearly distinguish that case from this.

All of the other cases cited by appellants, after examination, were upon clearly distinguishing facts.

█ It is to be remembered that this is not an action to impress the insurance proceeds with an equitable lien and enforce it. The Montborne Lumber Company was not made a party hereto.

It is elementary that a fire insurance policy is a purely personal contract, and that payment by the insurer to the insured named in a policy is compulsory. Consequently, payment by the insurer to the Montborne Lumber Company was obligatory in order to acquit the insurer. It necessarily follows that receipt by the Montborne Lumber Company of the insurance proceeds was, in law, necessarily, a corporate act and not an act of the individuals sued herein. *Wilcox v. Gauntlett*, 200 Mich. 272, 166 N. W. 856. Whatever may have been the liability of that corporation for conversion of the insurance fund, is not here at issue, for it is not sued.

There is nothing contrary, in principle, to our conclusion in any of the cases from this court cited by appellant: *Lough v. Davis & Co.*, 30 Wash. 204, 70 Pac. 491, 59 L. R. A. 802, 94 Am. St. 848; *Howe v. Northern Pacific Railway Co.*, 30 Wash. 569, 70 Pac. 1100, 60 L. R. A. 949; *Salhinger v. Salhinger*, 56 Wash. 134, 105 Pac. 236; *Tefft v. Schaefer*, 148 Wash. 602, 269 Pac. 1048; *Pacific Fruit & Produce Co. v. Modern Food Stores*, 158 Wash. 212, 290 Pac. 859. The divers situations involved in those cases render them inapt in this case.

It seems to be sustained by practically universal au-

thority that an equitable title or right is not enough to support an action for conversion.

We therefore conclude that the demurrer to the second amended complaint was properly sustained, and that the judgment should be and is affirmed.

TOLMAN, C. J., MITCHELL, PARKER, and MILLARD, JJ., concur.