[No. 11442-2-III.   Division Three.   June 30, 1992.]

LEE R. ELLENBURG, ET AL, *Appellants,* v. LARSON FRUIT COMPANY, INC., *Respondent.*

*Vernon E. Fowler, Jr., Robert E. Lawrence-Berrey, Jr.,* and
*Peters, Fowler & Inslee, P.S.,* for appellants.

*James P. Hutton* and *Velikanje, Moore & Shore Inc. P.S.,*
for respondent.

THOMPSON, J. — Lee R. and Barbara Ellenburg appeal
the dismissal of their lawsuit against Larson Fruit Com-
pany, Inc. We reverse and remand for entry of judgment in
favor of Ellenburgs.

In September 1984, Lee R. Ellenburg purchased an apple
orchard from Northwest Land Investment Company (North-
west Investment). The purchase was financed by a real
estate contract with the seller. Concurrently with the execu-
tion of the real estate contract, Ellenburg entered into an
orchard management agreement with Northwest Vineyard/
Orchard Management Company (Northwest Management).
Northwest Management and Northwest Investment were
related entities.

Ellenburg became dissatisfied with the management prac-
tices and services of Northwest Management and refused to
reimburse them for moneys allegedly advanced on his
behalf. In response, on June 26, 1986, Northwest Manage-
ment filed a lien on Ellenburg's apple crop. On June 30,
Ellenburg sent a letter to Northwest Management terminat-
ing the management agreement and demanding possession
of his orchard. Northwest Management refused to relinquish
possession of the orchard and continued to manage it.

In July, Northwest Management filed a lawsuit against Ellenburg in Grant County Superior Court for foreclosure of its crop lien and for breach of the management agreement. That same month, Northwest Investment sent Ellenburg a notice of intent to declare a forfeiture of the real estate contract. On October 20, a declaration forfeiting Ellenburg's interests in the orchard was recorded.

Before Northwest Investment recorded the forfeiture, Northwest Management contacted Larson Fruit about harvesting the fruit on Ellenburg's orchard. Ellenburg's attorney learned of this, spoke with Larson Fruit, and by letter dated August 18, 1986, sent written notice to Larson Fruit that Northwest Management did not have authority to contract on behalf of Ellenburg. He also informed Larson Fruit there was a pending lawsuit between Ellenburg and Northwest Management. He stated:

> The purpose of this letter is to request confirmation from you that you will not disburse any funds from the Ellenburg orchard to the management group until the current problems are resolved or pursuant to court order.

Larson Fruit received this letter on or about August 23, 1986. Thereafter and before September 3, Ellenburg's attorney telephoned Larson Fruit's attorney and told him Ellenburg did not want any of the proceeds from his crop to be disbursed without Ellenburg's approval.

On September 3, Larson Fruit and an entity called "Northwest Land Management Company" entered into a written agreement whereby Larson Fruit would advance $100,000 to Northwest Land Management.[1] The agreement was entitled "Agreement Relating to Grower Advances". Payment to Larson Fruit was guaranteed by the three principal shareholders of Northwest Land Management. Ellenburg was not a party to the agreement, and neither Ellenburg nor his attorney was informed of it. Larson Fruit made no effort to determine whether Northwest Management used the advance for the benefit of Ellenburg's crop.

---

[1] It appears that the contracting party was actually Northwest Vineyard/Orchard Management Company (Northwest Management).

On September 22, Ellenburg's attorney wrote Larson Fruit's attorney and advised him he was relying on his representations that no money would be advanced or paid from crops growing on Ellenburg's orchard. Ellenburg's apple crop was harvested and Larson Fruit stored, packed and sold it. After deducting handling, packing, storing and selling expenses, the net return was $102,819.23. Larson Fruit retained the proceeds.

Ellenburg commenced an action against Larson Fruit, demanding payment of the $102,819.23, together with pre-judgment interest from the date of sale, costs and attorney fees. Larson Fruit paid $2,819.23 into the registry of the court but applied the $100,000 balance to satisfy the advance made to Northwest Management. It also brought a third party action for indemnification against the three shareholders who guaranteed the advance. By this time, Northwest Management was in bankruptcy and at some unspecified time before trial, two of the three guarantors filed personal bankruptcies.

In October 1989, the bankruptcy trustee for Northwest Management sold the lawsuit filed against Ellenburg to Ellenburg for $3,500. The lawsuit was subsequently dismissed with prejudice upon Ellenburg's motion.

In November 1990, Larson Fruit's third party claims in this lawsuit were severed. A bench trial commenced.

After Larson Fruit examined its last witness, it moved pursuant to CR 15(b) to amend its answer, adding as an affirmative defense an equitable lien on Ellenburg's crop proceeds. The motion was granted. The trial court found Larson Fruit was a volunteer when it advanced the $100,000 to Northwest Management, but nevertheless concluded it had an equitable lien on Ellenburg's crop proceeds in the full amount.

Ellenburg moved for reconsideration of the trial court's decision. On reconsideration, the trial court determined Larson Fruit was not a volunteer. It held an equitable lien arose in favor of Larson Fruit because Ellenburg would be unjustly enriched if the crop proceeds were paid to him.

Ellenburg's lawsuit was dismissed with prejudice and this appeal followed.

Ellenburg contends the trial court erred in determining that Larson Fruit was not a volunteer when it made the advance and erred in concluding Larson Fruit was entitled to an equitable lien. Although Ellenburg concedes $15,000 had to be paid for harvest costs, he denies he would be unjustly enriched if he received the remaining $85,000 withheld by Larson Fruit.

The first question presented is whether the evidence established Larson Fruit had the right to be repaid by Ellenburg. If it did, the question arises as to whether Larson Fruit is entitled to an equitable lien remedy.

■ Unjust enrichment is a quasi-contract theory. *Lynch v. Deaconess Med. Ctr.*, 113 Wn.2d 162, 165, 776 P.2d 681 (1989). Two elements must be established before quasi-contractual obligations can be imposed: (1) the party conferring the benefit must not be a volunteer and (2) the party receiving the benefit must be unjustly enriched. *Lynch*, at 165; *Smith v. Dalton*, 58 Wn. App. 876, 883, 795 P.2d 706 (1990); *Trane Co. v. Randolph Plumbing & Heating*, 44 Wn. App. 438, 442, 722 P.2d 1325 (1986).

■ On reconsideration, the trial court concluded Larson Fruit was not a volunteer. Appellate review of a conclusion of law, based upon findings of fact, is limited to determining whether the findings are supported by substantial evidence, and if so, whether those findings support the conclusion. *American Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 222, 797 P.2d 477 (1990).

■ The trial court made the following findings relevant to the question of whether Larson Fruit was acting as a volunteer:

1. On September 3, 1986, pursuant to a request from the Northwest entities and their principal, Larson and Northwest Land Management Company entered into an Agreement Relating to Grower Advances whereby Larson loaned $100,000.00 to Northwest Land Management for reimbursement of the growing expenses and for costs of harvest of the

1986 apple crop grown on a 133-acre orchard located in Grant County, Washington.

. . . .

3. Ellenburg was involved in a dispute with the Northwest groups at the time the loan was made. Ellenburg communicated with Larson through his attorneys.

. . . .

6. On August 18, 1986, counsel for Ellenburg wrote a letter to Larson notifying Larson that Ellenburg's position was that the Northwest group did not have authority to contract with Larson to handle the crop. Larson acknowledges receipt of the letter. On September 12, 1986, counsel for Ellenburg notified the attorney for Northwest Land Investment that Ellenburg did not object to the 1986 crop being handled by Larson. Counsel also indicated that Larson had been told that they should not make any advances on the crop without Ellenburg's consent.

. . . .

13. Larson Fruit was not compelled or forced to loan the money to the management group.

These findings have not been challenged. Unchallenged findings are verities on appeal. *Nearing v. Golden State Foods Corp.*, 114 Wn.2d 817, 792 P.2d 500 (1990).

██ ██ The following conclusion of law also contains a finding relevant to a determination of Larson Fruit's volunteer status:

4. . . . Larson was not compelled to loan the money and had knowledge of the dispute between Ellenburg and Northwest before loaning the money.

A finding of fact, erroneously described as a conclusion of law, is reviewed as a finding. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986). Individual findings of fact must be read in the context of other findings of fact and conclusions of law. *In re Hews*, 108 Wn.2d 579, 595, 741 P.2d 983 (1987).

██ Whether one acts as a volunteer is determined in light of all surrounding circumstances, including (1) whether the benefits were conferred at the request of the party benefited, *see Trane*, at 442; (2) whether the party benefited knew of the payment, but stood back and let the party make the payment, *Smith v. Kneisley*, 187 Wash. 278, 60 P.2d 14

(1936); and (3) whether the benefits were necessary to protect the interests of the party who conferred the benefit or the party who benefited thereby. *Cf. Norris v. Tebrich,* 65 Wn.2d 238, 241, 396 P.2d 637 (1964).

Although there is substantial evidence to support the challenged findings, the challenged and unchallenged findings do not support the trial court's conclusion that Larson Fruit did not act as a volunteer. Ellenburg did not request any advances from Larson Fruit. Ellenburg notified Larson Fruit there was a pending lawsuit with Northwest Management. Larson Fruit was told not to disburse orchard funds. Ellenburg did not know about the advance until long after it was made. Finally, only $15,000 of the $100,000 advanced was shown to have benefited Ellenburg. The balance ostensibly went to reimburse Northwest Management for expenses already incurred and Ellenburg disputed Northwest Management's right to be repaid for those expenses.

As the parties acknowledge, if the trial court erred in concluding that Larson Fruit was a volunteer, it is not necessary to reach the issue of whether Ellenburg would be unjustly enriched if he received $85,000 from his crop proceeds. *Trane.* We agree, and do not reach the issue, but note there does not appear to be any evidence to support the conclusion Ellenburg would be unjustly enriched.

██ Even if Larson Fruit had not been a volunteer and had a right to reimbursement, the right would not give rise to an equitable lien remedy. An equitable lien is neither a debt nor a right of property, but a *remedy* for a debt. *Nelson v. Nelson Neal Lumber Co.,* 171 Wash. 55, 61, 17 P.2d 626, 92 A.L.R. 554 (1932). *See also Monegan v. Pacific Nat'l Bank,* 16 Wn. App. 280, 287, 556 P.2d 226 (1976). As set forth in *Falconer v. Stevenson,* 184 Wash. 438, 442, 51 P.2d 618 (1935) (quoting *Capen v. Garrison,* 193 Mo. 335, 92 S.W. 368 (1906)):

> The right to an equitable lien arises when a party *at the request of another* advances him money to be applied and which is applied to the discharge of a legal obligation of that other, but when, *owing to the disability of the person to whom*

*the money is advanced, no valid contract is made for its repayment.*

(Italics ours.)

Ellenburg did not request moneys from Larson Fruit. Northwest Management was not operating under any disability. Larson Fruit entered into a valid contract with Northwest Management for repayment of the loan, and secured it with the guaranties of the borrower's shareholders. None of the requisites giving rise to an equitable lien were present. *Falconer.* As to equitable subrogation, the remedy is inapplicable to creditor-debtor relationships. *See Lynch,* at 166.

We reverse and direct entry of judgment in favor of Ellenburg in the amount of $85,000 plus interest from the date Larson Fruit received the crop proceeds.

SHIELDS, C.J., and MUNSON, J., concur.

Review denied at 120 Wn.2d 1011 (1992).