146 P.3d 1172 (2006)
Carole SORENSON, a single person, Respondent,
v.
Barbara PYEATT, a married woman, Judy Hanson and John Doe Hanson, and the marital community comprised thereof; Paula Steiner and John Doe Steiner, and the marital community comprised thereof, Defendants,
Household Finance Corporation III, a Washington corporation; Saxon Mortgage Incorporated, a Washington corporation, Petitioners,
William F. Walker and Jane Doe Walker, and the marital community comprised thereof, Defendants,
Meritech Mortgage Services, a Washington corporation; and Bankers Trust Company, a Washington corporation; and their heirs, successors, and assigns, and anyone, known or unknown, claiming any right, title or interest in certain real property, Petitioners.
No. 77229-1.
Supreme Court of Washington, En Banc.
Argued May 16, 2006.
Decided November 9, 2006.
*1173 Jonathan P. Meier, Stephen J. Sirianni, Sirianni Youtz Meier & Spoonemore, Seattle, for Petitioner.
Philip E. Rosellini, Bellingham, for Respondents.
ALEXANDER, C.J.
¶ 1 A group of commercial lenders (Lenders)[1] seeks to overturn a decision of the Court of Appeals in which that court reversed the trial court's judgment imposing an equitable lien against real property located on Lummi Island and foreclosing upon that property after the trial court had quieted title in the name of Carole Sorenson (Sorenson). The equitable lien was imposed in partial satisfaction of a judgment the trial court granted in favor of the Lenders against Ken and Barbara Pyeatt,[2] the latter of whom forged quitclaim deeds to the property and used the property as collateral to secure roughly $868,000 in loans from the Lenders. Alternatively, the Lenders assert that Sorenson should be equitably estopped from claiming unencumbered ownership of the property.
*1174 ¶ 2 We hold that the Lenders are not entitled to relief, equitable or otherwise. In our view, the Court of Appeals correctly concluded that the Lenders failed to meet the criteria set forth by this court in Falconer v. Stevenson, 184 Wash. 438, 51 P.2d 618 (1935), for imposing an equitable lien. We hold, additionally, that it correctly concluded that Barbara Pyeatt had no power to give the Lenders a legally enforceable security interest in the Lummi Island property. We further conclude that equity does not call for divesting Sorenson of her full property interest to satisfy the Lenders' judgment against the Pyeatts.
¶ 3 Finally, the Lenders have failed to show that they detrimentally relied on an admission, act, or statement by Sorensona predicate to establishing an equitable estoppel claim. Consequently, we affirm the Court of Appeals and remand to the trial court for an order quieting title to the Lummi Island property in Sorenson free and clear of all claims by the Lenders.

I
¶ 4 Prior to commencement of this action in 2003, Carole Sorenson and Ken Pyeatt had been longtime friends. During the 1980s, Sorenson and Pyeatt engaged in a series of transactions in which Ken Pyeatt conveyed his interest in certain real property to Sorenson, including the Lummi Island real property at issue in this case.[3] Although these transfers had the effect of making Sorenson the record owner, as a practical matter, Ken Pyeatt retained incidents of ownership.[4] The trial court determined that these transactions were undertaken for the purpose of keeping title out of Ken Pyeatt's name in order that he might avoid his then-creditors and, possibly, to keep the properties out of the reach of the drug enforcement agency.[5] From time to time, Sorenson conveyed the properties back to Ken Pyeatt so that he could use the property as collateral to borrow money.[6] After doing so, Pyeatt would reconvey the properties back to Sorenson.
¶ 5 In late 1990, Pyeatt conveyed the Lummi Island property to Sorenson by a quitclaim deed. The deed was recorded with the Whatcom County Auditor's Office on December 4, 1990. Sorenson maintained record ownership of the property until the action leading to this appeal was commenced.
¶ 6 In 1996, Ken Pyeatt married Barbara Pyeatt. Pyeatt disclosed to Barbara Pyeatt that he owned the Lummi property, but that he was keeping it in Sorenson's name. In February 1998, Barbara Pyeatt began an extensive fraudulent borrowing and refinancing scheme. As part of this scheme, Barbara Pyeatt obtained two preprinted quitclaim deeds. Without Carole Sorenson's knowledge or consent,[7] she typed in the legal description of the Lummi Island property on the deeds. She then signed Sorenson's name as grantor and made herself the grantee. After the forged documents were notarized by Barbara Pyeatt's sister, they were recorded with the Whatcom County Auditor.
¶ 7 Barbara Pyeatt and Ken Pyeatt subsequently entered into several loan transactions *1175 with various lenders, which ended with one final loan/refinance in October 2000. Barbara Pyeatt pledged the Lummi Island property as collateral for these loans. Altogether, the Pyeatts borrowed hundreds of thousands from the Lenders.[8] The record shows that the Pyeatts used the fraudulently obtained loan money primarily as disposable income.

II
¶ 8 In 2003, Sorenson filed suit in the Whatcom County Superior Court to quiet title to the Lummi Island property in her name. Sorenson named, among others, Barbara Pyeatt and the Lenders as defendants. The Lenders answered, seeking to enforce the forged deeds of trust in their favor. At trial, the trial court declared Carole Sorenson to be the record owner of the Lummi Island property and nullified the deeds of trust in favor of the Lenders on the basis that the quitclaim deeds, purporting to vest title in Barbara Pyeatt, had been forged. It then entered judgment against the Pyeatts in the amount of $868,000, together with interest from the entry of judgment.
¶ 9 Notwithstanding the fact that it had not entered a judgment against Sorenson, the trial court imposed an equitable lien[9] against the property in the amount of $532,000 in partial satisfaction of the judgment the Pyeatts' creditors, including the Lenders, had obtained against the Pyeatts. The trial court reasoned that a lien should be imposed because Sorenson was "culpable" in failing to exercise a reasonable degree of oversight over the Lummi property, thereby helping to facilitate the Pyeatts' fraudulent conduct and serving as a "cause[ ]-in-fact" of the Lenders' financial losses. Clerk's Papers (CP) at 18, 19. Based on this conclusion, the trial court decreed that the Lenders were entitled to foreclosure on Sorenson's property because a judgment for money damages against the Pyeatts would have been an "illusory remedy." Id. at 22.
¶ 10 Apparently aware that the imposition of an equitable lien might be reversed on appeal, the trial court took the unusual action of concluding, alternatively, that while Sorenson took record title to the property, Ken Pyeatt remained the actual or beneficial owner.[10] Consequently, it held that, in the event its decision was overturned, the Lenders' deeds of trust could be enforced directly against Ken Pyeatt as owner and that foreclosure could occur on the property on that basis.
¶ 11 Sorenson appealed the trial court's imposition of the equitable lien. Division One of the Court of Appeals reversed the trial court's imposition of the lien, concluding that it had no authority to impose the equitable lien against Sorenson's property for the reason that the necessary elements for such a lien are not present in this case. The Lenders sought discretionary review here. We granted the petition for review. Sorenson v. Pyeatt, noted at 156 Wash.2d 1010, 132 P.3d 145 (2006).

*1176 III
¶ 12 This case requires us to determine both the parameters of the equitable lien doctrine and whether the Lenders are entitled to equitable relief. In matters of equity, "trial courts have broad discretionary power to fashion equitable remedies." In re Foreclosure of Liens, 123 Wash.2d 197, 204, 867 P.2d 605 (1994). The Supreme Court reviews the authority of a trial court to fashion equitable remedies under an abuse of discretion standard. Blair v. Wash. State Univ., 108 Wash.2d 558, 564, 740 P.2d 1379 (1987). However, it is a well-established rule that an equitable remedy is an extraordinary, not ordinary form of relief. Henry L. McClintock, Handbook of the Principles of Equity § 22, at 47 (2d ed.1948). A court will grant equitable relief only when there is a showing that a party is entitled to a remedy and the remedy at law is inadequate. Orwick v. City of Seattle, 103 Wash.2d 249, 252, 692 P.2d 793 (1984).
¶ 13 The Lenders acknowledge that the deeds purporting to transfer title from Sorenson to Barbara Pyeatt were forged. However, they assert that they are entitled to relief on grounds that the Court of Appeals erred in according too much weight to this court's decision in Falconer, 184 Wash. 438, 51 P.2d 618, when reversing the trial court's imposition of an equitable lien, and it further erred by failing to give proper deference to the discretion of the trial court to fashion appropriate equitable remedies. Alternatively, the Lenders argue that Sorenson is equitably estopped from claiming unfettered ownership of the Lummi property, even in the face of her having record title. More specifically, the Lenders assert that Sorenson is precluded from contesting the validity of the deeds of trust held by the Lenders due to Sorenson's allegedly culpable conduct in facilitating the Pyeatts' fraudulent conduct through her long standing cooperation with Ken Pyeatt in shielding the Lummi Island property from creditors and in her failure to properly monitor title to the property. While we fully address each of the Lenders' arguments, we conclude that although Carole Sorenson engaged in inequitable conduct, neither the equities nor the law is on the Lenders' side.

A. Equitable Lien
¶ 14 The principal question before us is whether the trial court erred in imposing an equitable lien against real property pledged as collateral for loans where the borrower (Barbara Pyeatt) obtained a record interest in that property by fraud and the court quieted title in the hands of Sorenson, who was not a party to the fraud and/or a debtor. Like the Court of Appeals, we answer "yes" to that question.
¶ 15 As the Court of Appeals noted, the seminal Washington case applying the doctrine of equitable lien is Falconer, 184 Wash. 438, 51 P.2d 618. In Falconer, a court appointed guardian mortgaged the ward's property to obtain funds to construct a house on the property. After the ward became emancipated through marriage, the lender's assignee sued on the note and sought to foreclose on the mortgage. Alternatively, the assignee sought an equitable lien. The trial court held that because the mortgage that was signed by the guardian was ineffective to encumber the property, it could not be foreclosed. The trial court went on, however, to impose an equitable lien on the property in favor of the assignee. On review, this court held, after applying criteria for imposing an equitable lien adopted by the Missouri Supreme Court in Capen v. Garrison, 193 Mo. 335, 92 S.W. 368 (1906), that the trial court erred in granting the lien to the lender's assignee.
¶ 16 In Falconer, we held that the right to an equitable lien arises when:
"`a party at the request of another advances him money to be applied and which is applied to the discharge of a legal obligation of that other, but when, owing to the disability of the person to whom the money is advanced, no valid contract is made for its repayment.'"
Falconer, 184 Wash. at 442, 51 P.2d 618 (quoting Capen, 193 Mo. at 349-50, 92 S.W. 368). We went on to note that "`[t]he doctrine of equitable lien has its prescribed boundaries . . . it is not a limitless remedy to *1177 be applied according to the . . . conscience of the particular chancellor.'" Id. (quoting Capen, 193 Mo. at 349, 92 S.W. 368). Applying this standard, we indicated that the ward who owned the property that was mortgaged had no voice in the borrowing or expenditures of the borrowed money. Thus, we held that because the assignee was seeking to enforce against a minor who had no legal ability to make a binding agreement in the first instance, the security instrument was ineffective to encumber the property on which the trial court imposed the equitable lien.
¶ 17 In analyzing the case now before us, the Court of Appeals adopted verbatim the Falconer court's "requirements" for imposing an equitable lien. It stated that "Falconer imposes express limitations on [when a trial court may impose] the remedy of an equitable lien." Sorenson v. Pyeatt, noted at 126 Wash.App. 1047, 2005 WL 763253 at *3, 2005 Wash.App. LEXIS 593, at *10. The Court of Appeals then struck down the equitable lien stating that two of the "necessary elements for such a lien are not present in this case" that is (1) the Lenders made a valid contract with Barbara Pyeatt for repayment of the notes and (2) that Barbara Pyeatt's alleged financial inability to repay the notes is not a disability as that term is used in the "rule of Falconer." Id. at *3, 4, 2005 Wash.App. LEXIS 593, at *9, 11.
¶ 18 The Court of Appeals went further and stated that even if the Lenders in this case were able to overcome the express limitations imposed by the Falconer case on granting an equitable lien, they were unable to show that their request for a lien was for one of the three purposes identified by the appeals court in Northern Commercial Co. v. E.J. Hermann Co., 22 Wash.App. 963, 593 P.2d 1332 (1979). Sorenson at *3, 2005 Wash.App. LEXIS 593, at *10. In Northern Commercial, a divorce case, the trial court imposed, without considering the equitable factors stated in Falconer, an equitable lien on the husband's real estate in favor of the wife. In imposing the lien, the court in Northern Commercial noted that other jurisdictions have imposed equitable liens in order to secure property settlements, alimony payments, and the award of community property. N. Commercial, 22 Wash.App. at 967-68, 593 P.2d 1332. Picking up on the court's reasoning in Northern Commercial, the Court of Appeals noted that none of these three "purposes is present here." Sorenson at 3, 2005 Wash.App. LEXIS 593, at *11. Thus, it held that the trial court had no authority to impose an equitable lien against Sorenson's property because the "necessary elements for such a lien are not present in this case." Id.
¶ 19 The Lenders argue that the Court of Appeals erred in adopting an "overly technical and narrow" view of equity and by limiting a trial court's ability to impose an equitable lien to only those instances where the party requesting the lien can meet the elements set forth by this court in Falconer. Pet. for Review at 19. The Lenders assert that Falconer should be read to state certain conditions under which an equitable lien will be imposed. However, they argue the case should not be read as laying out the only such conditions under which an equitable lien will arise. Rather, the Lenders contend that primacy of a trial court's authority to fashion an equitable remedy calls for this court to hold that an equitable lien may be imposed "`where there is no valid lien at law and it is needed to prevent an injustice.'" Pet'rs' Suppl. Br. at 11-12 (quoting N. Commercial, 22 Wash.App. at 968 n. 2, 593 P.2d 1332) (citing McClintock, supra, § 118).
¶ 20 In response, Sorenson asserts that this court's decision in Falconer affirmatively sets forth the law on equitable lien in Washington. Sorenson contends that the elements necessary to establish an equitable lien and the boundaries with regard to its application are conclusively set forth in Falconer, and there is no need for further clarification. Sorenson then posits, contrary to the Lenders' position that the Court of Appeals should be reversed because it applied a narrow and inflexible approach to equity, that court should be affirmed because it adhered to well-established precedent when determining that the elements necessary to impose an equitable lien "are not present in this case." Sorenson at *3, 2005 Wash.App. LEXIS 593, *1178 at *11. We agree with Sorenson's position.[11]
¶ 21 Even though an equitable lien is an equitable remedy and may arise from any number of varied facts and circumstances, the Court of Appeals correctly concluded that this remedy has certain elements that must be established by a claimant before it can be imposed. Notwithstanding the Lenders' suggestion that Falconer is a "depression-era case" and outmoded,[12] we take this opportunity to reaffirm the Falconer decision, and the criteria we indicated is to be applied by a trial court when determining whether to impose an equitable lien. In doing so, we give meaning to our pronouncement in Falconer that the equitable lien doctrine has "prescribed boundaries" by making the imposition of an equitable lien a mixed question of law and fact. Falconer, 184 Wash. at 442, 51 P.2d 618. That is, henceforth, a trial court's conclusion as to whether the facts, as found, meet the requirements for granting an equitable lien will be reviewed for an error of law on appeal.
¶ 22 Having made the determination that Falconer is the controlling authority in this case, disposition of this equitable lien issue becomes quite straightforward. We conclude, as did the Court of Appeals, that the Lenders have failed to establish under Falconer that they are entitled to an equitable lien. This is because, as was the factual circumstance in Falconer, there is a security instrument (the deed of trust) that does not effectively encumber the property against which the trial court imposed the lien. It is uncontroverted that Barbara Pyeatt forged the deeds that purported to convey title to the Lummi Island property to her and, thus, she had no power to grant a valid security interest in the property. Accord Lewis v. Kujawa, 158 Wash. 607, 617, 291 P. 1105 (1930). Moreover, there is nothing in the record that establishes the invalidity of the contracts for repayment between the Lenders and Barbara Pyeatti.e., the promissory notes signed by Pyeatt. Indeed, the trial court entered judgment against her and Ken Pyeatt on those notes and that portion of the trial court's order has not been challenged. Furthermore, there is nothing in the record to suggest any "disability" on Barbara Pyeatt's part which relates to the invalidity of the contract to repay the notes. The fact that the judgment may remain partially or fully unsatisfied due to the Pyeatts' existing financial difficulties, and the inability of the Lenders to enforce the deeds of trust, is not a "disability" within the meaning of the rule of Falconer. See Falconer, 184 Wash. at 442, 51 P.2d 618; see also Ellenburg v. Larson Fruit Co., 66 Wash.App. 246, 253, 835 P.2d 225 (1992). Accordingly, as the Court of Appeals determined, the Lenders' failure to satisfy these elements precluded the trial court from imposing an equitable lien in this case.
¶ 23 Even if we were to step outside the parameters of Falconer as the Lenders urge us to do, we find no reason to uphold the trial court's imposition of the lien. It must be kept in mind that an equitable lien is a remedy for debt determined to be owed in law. See Ellenburg, 66 Wash.App. at 252, *1179 835 P.2d 225 (citing Nelson v. Nelson Neal Lumber Co., 171 Wash. 55, 61, 17 P.2d 626 (1932)). In each equitable lien case brought to our attention, an equitable lien was imposed only upon the property or interest owned by the person incurring the debt. Neither fact is present in this case.
¶ 24 Here, the trial court's uncontroverted findings establish that Barbara Pyeatt, not Carole Sorenson, borrowed funds from the Lenders. The record shows that Barbara Pyeatt, not Carole Sorenson, signed the promissory notes upon which the trial court's judgment is based. Consequently, it was Barbara Pyeatt, not Carole Sorenson, who incurred the debt owed to the Lenders. The record also establishes that Barbara Pyeatt took possession of the property upon which the trial court imposed the lien by fraud, thus it was not hers to pledge. Furthermore, the trial court quieted title in the Lummi property with Sorenson after having determined that Ken Pyeatt quitclaimed such property over to her in late 1990. Thus, under the trial court's first alternate holding, which we sustain in part, Sorenson, not Pyeatt, is the owner of the property interest upon which the equitable lien is being imposed. As a result of the trial court's determination that Pyeatt, not Sorenson, is obligated to repay the notes, we conclude that there is no basis upon which to impose an equitable lien on Sorenson's property. The trial court, therefore, erred in doing so.
¶ 25 In sum, the Lenders have not provided this court with authority which establishes that a Washington court may impose an equitable lien upon the property of a third party in order to satisfy a judgment entered against another person who has been determined to legally owe the debt. What is more, applying general equity principles, we do not see how we would be preventing an injustice by allowing the legal rights of Sorenson in this case to be cut down in order to provide the Lenders a "meaningful" remedy for Barbara Pyeatt's fraudulent conduct.

B. Equitable Estoppel
¶ 26 The Lenders argue that Sorenson's history of "inequitable conduct" in relation to the Lummi Island property should equitably estop her from claiming title to the property. Pet. for Review at 8. The Lenders assert that the trial court's alternative holding (which, as noted supra footnote 10, was a determination that while Sorenson took record title to the property, Ken Pyeatt remained the actual owner and, as a result, the Lenders' deeds of trust, though fraudulent, could be enforced against him) provides a basis on which this court can affirm the trial court's order.[13]
¶ 27 Three elements must be established in order to support an equitable estoppel claim. It must be shown that (1) the conduct, acts, or statements by the party to be estopped are inconsistent with a claim afterward asserted by that party, (2) the party asserting estoppel took action in reasonable reliance upon that conduct, act, or statement, and (3) the party asserting estoppel would suffer injury if the party to be estopped were allowed to contradict the prior conducts, act, or statement. Pub. Util. Dist. No. 1 v. Walbrook Ins. Co., 115 Wash.2d 339, 347, 797 P.2d 504 (1990). As effecting title to land, equitable estoppel is a doctrine by which a party may be prevented from setting up his legal title because he has through his acts, words, or silence led another to take a position in which the assertion of the legal title would be contrary to equity and good conscience. Fla. Land Inv. Co. v. Williams, *1180 98 Fla. 1258, 116 So. 642 (1928). In Washington, "very clear and cogent evidence" is required "to estop an owner out of a legal title to real property." Tyree v. Gosa, 11 Wash.2d 572, 578, 119 P.2d 926 (1941).
¶ 28 The Lenders acknowledge that estoppel cannot transform a forged deed into a valid deed. Rather, the Lenders argue that estoppel can be applied to prevent a party who has record title from contesting the validity of a forged title instrument against the innocent purchaser/lender who holds the forged deed. Based upon this theory, the Lenders assert that Carole Sorenson's "culpability" in serving as Ken Pyeatt's "straw person" in the scheme to keep his property out of the reach of creditors precludes her from challenging the validity of the Lenders' deeds of trust. Pet'rs' Suppl. Br. at 1. The Lenders argue also that Sorenson was culpably negligent in failing to monitor title to the Lummi property and, thus, she helped to facilitate the Pyeatts' fraud. As a result, they argue that her silence as to the Pyeatts' activities estops her from claiming legal title to the property.
¶ 29 In response to this argument, Sorenson contends that the Lenders' equitable estoppel claim has no merit because (1) she did not act inconsistently toward this group of Lenders as she held recorded title to the Lummi property from 1990 forward and (2) that the reliance element is not met because the Lenders relied on Barbara Pyeatt's fraudulent conduct, and not on any conduct on her part. We agree with Sorenson that the reliance requirement is not met.[14]
¶ 30 The second element of the three-part equitable estoppel test requires the party asserting estoppel to show that he reasonably relied to his determinant on an act, admission, or statement of the party to be estopped. Here, the Lenders assert that they reasonably relied on a "title that Ms. Sorenson helped manipulate." Pet'rs' Suppl. Br. at 7. They argue that if it were not for Sorenson's negligence in remaining silent in the face of Ken Pyeatt's history of using his property to defraud creditors, the Lenders would not have relied to their detriment on the Pyeatts' representations that they were the actual owners of the Lummi property.
¶ 31 The Lenders correctly point out that Washington recognizes estoppel by silence. See Strand v. State, 16 Wash.2d 107, 115, 120, 132 P.2d 1011 (1943). However, it is an essential element of an equitable estoppel claim that the party asserting estoppel show that the other's conduct induced him to believe in the existence of the state of facts and to act thereon to his prejudice. 31 C.J.S. Estoppel and Waiver §§ 59, 78 (1996); Elmonte Inv. Co. v. Schafer Bros. Logging Co., 192 Wash. 1, 72 P.2d 311 (1937) (It is essential to an equitable estoppel that the person asserting the estoppel changed his position in reliance upon the representations or conduct of the party sought to be estopped.).
¶ 32 Here, the record does not support the Lenders' assertion that Sorenson's actions either induced them to provide Barbara Pyeatt with loans or that Sorenson anticipated that this group of Lenders would take the actions they did. This is because Sorenson was neither aware of nor did she sanction Barbara Pyeatt's forgery of the deeds. The record shows, rather, that Carole Sorenson became aware of the fraudulent activities of Barbara Pyeatt only when she read a notice of a trustee's sale published in the local *1181 newspaper.[15] Furthermore, it is undisputed that Sorenson was not aware that Barbara Pyeatt was using the Lummi property as collateral to borrow money from this group of Lenders. It is also undisputed that Sorenson did not personally benefit from the money the Pyeatts borrowed. Finally, it was Barbara Pyeatt, not Sorenson, who signed the Lenders' deeds of trust. In sum, the record does not support the Lenders' assertion that Sorenson's ignorance of the Pyeatts fraudulent conduct, which they equate to willful blindness, induced them to advance funds to the Pyeatts.
¶ 33 We readily agree with the Lenders that Sorenson engaged in some measure of inequitable conduct. To be sure, Sorenson was aware of, and helped participate in Ken Pyeatt's schemes during the 1980s and into 1990 to keep his property out of the reach of creditors. In addition, when Ken Pyeatt wanted to sell or borrow against one of the properties he deeded to Sorenson during this time, he would simply ask Sorenson for a reconveyance. Sorenson even testified that she "accommodate[d]" Ken Pyeatt during this period. Verbatim Report of Proceedings at 59; CP at 12.
¶ 34 Although we are loath to sanction, however tangentially, Sorenson's conduct, we are constrained in this case by the law and by the record. The record does not establish a nexus between Sorenson's prior inequitable conduct and the Lenders' alleged financial harm in this case. As demonstrated by the factual findings noted above, the transactions between Ken Pyeatt and Sorenson appear to have been directed toward deceiving a group of creditors wholly separate from the present petitioners. This disconnect between Sorenson's prior conduct and the Lenders' "losses" in this case is further shown when one considers that the Lenders did not become creditors of the Pyeatts until seven years after Ken Pyeatt quitclaimed the Lummi property to Sorenson in 1990. Thus, there is no merit to the Lenders' assertion that Sorenson participated in or was otherwise responsible for passing of a false title and that she is the "cause in fact" of their financial injury. Pet'rs' Suppl. Br. at 16. Consequently, the Lenders have failed to satisfy the required elements for establishing an equitable estoppel claim. Neither did they present the clear and cogent evidence needed to estop Sorenson, as record owner, from asserting all rights associated with her legal title. Accord Tyree, 11 Wash.2d 572, 119 P.2d 926.

C. Adequate Remedy at Law
¶ 35 The Lenders advance two additional claims for relief. They argue Sorenson should be estopped from taking unfettered title to the property under the doctrine of comparative innocence.[16] They assert also that the 1990 deed from Ken Pyeatt to Sorenson should be invalidated on the grounds that it was a fraudulent conveyance.[17] We reject these claims as well.
¶ 36 First, we dispose of these claims on procedural grounds. The statute of frauds claim is improperly raised for the first time in a supplemental brief. Therefore, we adhere to the general rule that this court will not address an argument "raised for the first time in a supplemental brief and not made originally by the petitioner or respondent within the petition for review or the response to petition." Cummins v. Lewis *1182 County, 156 Wash.2d 844, 851, 133 P.3d 458 (2006) (citing Douglas v. Freeman, 117 Wash.2d 242, 258, 814 P.2d 1160 (1991)); RAP 13.7(b). In addition, the Lenders did not raise the comparative innocence claim to the court below and, thus, it is not timely. Hous. Auth. v. N.E. Lake Wash. Sewer & Water Dist., 56 Wash.App. 589, 595 n. 5, 784 P.2d 1284 (1990); RAP 13.7(a).
¶ 37 Second, it is a fundamental maxim that equity will not intervene where there is an adequate remedy at law. Accord Orwick, 103 Wash.2d 249, 692 P.2d 793; McClintock, supra, § 22, at 48; 30A C.J.S. Equity § 25 (1992). In determining whether to exercise equitable powers, Washington courts follow the general rule that equitable relief will not be accorded when there is a clear, adequate, complete remedy at law. City of Lakewood v. Pierce County, 144 Wash.2d 118, 126, 30 P.3d 446 (2001). Furthermore, we think it a good equity policy that the person against whom the legal remedy is sought and authorized should be the same person against whom the equitable remedy is sought. Accord McClintock, supra, § 23; 30A C.J.S., supra, § 94.
¶ 38 In this case, the Lenders, as Barbara Pyeatt's creditors, brought suit on promissory notes executed by Barbara Pyeatt in favor of the Lenders. The Lenders recovered judgment against the Pyeatts and their marital community in the amount of $868,000, together with interest from the date the judgment was entered. The trial court also determined that the Lenders are "entitled to recover their attorneys' fees" against the Pyeatts and their marital community. The trial court's entry of judgment in favor of the Lender claimants on the money owed to them by Barbara Pyeatt is sufficient evidence that a remedy at law exists, that the Lenders in this case have availed themselves of this relief, and that equity does not call for our granting them the additional and extraordinary relief they seek.
¶ 39 In raising these additional grounds for relief, the Lenders again assert that due to the Pyeatts lack of funds and property to satisfy this judgment, they will likely never be accorded full relief for their losses. Even so, the remedy at law accorded to the Lenders in this case is valid, although the likelihood of full payment is small. We conclude that the Lenders have failed to show how the equities would be served by requiring, in essence, Sorenson to bear the burden of satisfying the Lenders' judgment against the Pyeatts.

IV
¶ 40 In sum, we affirm the Court of Appeals' holding reversing the trial court's imposition of an equitable lien on the Lummi Island property in favor of the Lenders because there is no debtor-creditor type relationship between the Lenders and Sorenson and principles of equity do not call in this case for our imposing this extraordinary form of relief. We also uphold the Court of Appeals' application of our prior decision in Falconer, 184 Wash. 438, 51 P.2d 618, notwithstanding the Lenders' suggestion that it should be modified or abandoned. Furthermore, we deny the Lenders' equitable estoppel claim. The Lenders failed to establish that it was Sorenson's conduct, as opposed to Barbara Pyeatt's fraudulent conduct, upon which they relied to their detriment. What is more, we conclude Sorenson's right to quiet title in the Lummi Island property should not be denied merely because she previously engaged in some measure of prior inequitable conduct, when such conduct was not directly connected to the present suit or creditors. As a result, we remand this case to the trial court for entry of an order (1) setting aside the equitable lien imposed upon the Lummi Island property, (2) dismissing all claims asserted by the Lenders against Sorenson, (3) striking those portions of the previous judgment ordering foreclosure on the property, and (4) quieting title to the property in Sorenson's name.
We concur: Justice CHARLES W. JOHNSON, Justice BARBARA A. MADSEN, Justice RICHARD B. SANDERS, Justice BOBBE J. BRIDGE, Justice TOM CHAMBERS, Justice SUSAN OWENS, Justice MARY E. FAIRHURST and Justice JAMES M. JOHNSON.
NOTES
[1] The Lenders/petitioners are Saxon Mortgage Inc., Bankers Trust Co., Meritech Mortgage Services, and Household Finance Corporation III.
[2] Ken and Barbara Pyeatt are not parties to this appeal.
[3] Unless otherwise noted, all facts cited herein are drawn from the trial court's findings of fact and conclusions of law and have not been challenged at this court by either the respondent or the petitioners. Unchallenged findings are verities on appeal. In re Disciplinary Proceeding Against Vanderbeek, 153 Wash.2d 64, 90 n. 24, 101 P.3d 88 (2004).
[4] For example, it was orally agreed upon that Ken Pyeatt would retain the privilege of occupying the various properties, including the Lummi Island property at issue here, as well as the ability to collect all incomes, rents, and proceeds of sale therefrom.
[5] Those creditors included Ken Pyeatt's former wife and the Internal Revenue Service. However, that group of creditors did not include any of the present Lenders/petitioners.
[6] In its oral ruling, the trial court noted that during the 1980s, at least 30 deeds of trust on various properties flowed back and forth between Mr. Pyeatt and other persons, including Sorenson.
[7] Specifically, the trial court found that Sorenson was neither aware of the forged deeds nor of the Pyeatts' borrowing money using the Lummi property as collateral. Indeed, in its oral ruling, the trial court stated that Sorenson did nothing illegal or unethical, and "broke no law, committed no crime." Clerk's Papers at 113.
[8] As of March 2003, Barbara Pyeatt owed $659,943 to Saxon Mortgage, a total that includes interest and penalties. In addition, Barbara Pyeatt had two outstanding loans with Household Finance, totaling $211,000. Both of these loans were secured by deeds of trust signed by Barbara Pyeatt pledging the Lummi Island property as collateral.
[9] An equitable lien "will be enforced in equity against specific property, though there is no valid lien at law; equity imposes liens either to carry out the intention of the parties to give a security or to prevent injustice, regardless of the intent." Henry L. McClintock, Handbook of the Principles of Equity § 118, at 319 (2d ed.1948). Equitable liens fall into two categories: (1) "[t]hose created to give effect to an intention of the parties to secure payment of an obligation by subjecting to the payment of the obligation specified property, such as equitable mortgages and equitable pledges," and (2) those created by the court to protect a party against inequitable loss, regardless of intent. Id. The Lenders argue the latter inequitable lien form should be applied here.
[10] Specifically, the trial court wrote: "[I]f the equitable mortgage described above and decreed in the accompanying judgment is set aside on appeal, this Court concludes that: (a) Ms. Sorenson never took actual (as opposed to record) title to the Lummi property; (b) Ken Pyeatt was, until entry of the accompanying judgment, the owner of the Property in all respects; and (c) Ken Pyeatt approved, ratified and benefited from the Lenders' Deeds of Trust, which are valid and enforceable in accordance with their terms." CP at 20-21.
[11] We do, however, agree with the Lenders that an equitable lien may be imposed beyond those limited circumstances identified by the Court of Appeals in this case. That is, we do not limit a trial court's ability to impose an equitable lien only when it serves the "purposes" of securing property settlements, alimony payments, and the award of community property. See Sorenson at *3, 2005 Wash.App. LEXIS 593, at *11. Rather, we acknowledge that there are a number of circumstances where an equitable lien has been and may be an appropriate equitable remedy. See N. Commercial, 22 Wash.App. 963, 593 P.2d 1332 (imposing equitable lien in context of community property law); Webster v. Rodrick, 64 Wash.2d 814, 817-18, 394 P.2d 689 (1964) (equitable lien imposed where defendant purchased home and other property with money embezzled from plaintiff); Speirs v. Jahnsen, 143 Wash. 297, 255 P. 117 (1927) (imposing equitable lien and order of foreclosure in favor of landowner in situation where landowner conveyed a portion of her property to building contactor in exchange for contractor's building structure on other land she owned and contractor did not complete building as agreed). As stated elsewhere in this opinion, Falconer provides the framework for a trial court to follow when determining whether the imposition of an equitable lien is appropriate given the factual situation before it. But neither today's decision nor Falconer forecloses a trial court's ability to apply this remedy when the particular legal circumstances and equities call for it.
[12] Pet. for Review at 17.
[13] Like the Court of Appeals, we are troubled by the fact that the trial court made alternative, directly inconsistent conclusions of law in this case. As the Court of Appeals noted when presented with the trial court's alternative conclusions that (1) the Lenders' deeds of trust were not valid because valid title cannot pass via a fraudulent conveyance instrument, and (2) the Lenders' deeds of trust are valid because Ken Pyeatt remained the actual owner of the Lummi property and ratified his wife's actions in encumbering the property. The "deeds of trust are either void or validthey cannot be both." Sorenson at *4, 2005 Wash.App. LEXIS 593, at *12-13. We are mindful that a trial court has broad discretionary powers in matters of equity. However, the trial court's decision in this case to make inconsistent alternative holdings constitutes both an abuse of that broad discretion and an error of law, thereby serving as separate grounds for affirming the Court of Appeals' decision to invalidate the equitable lien and to nullify the Lenders' deeds of trust on the Lummi Island property.
[14] Arguably, the Lenders have satisfied the first and third requirementsthat Sorenson has taken an inconsistent position and that they will suffer more than $800,000 in financial injury if not allowed to foreclose on the Lummi Island property. As to the first requirement, if one views Sorenson's conduct prior to the final time Pyeatt quitclaimed the property to her in 1990, the Lenders are correct that Sorenson has taken inconsistent positions in relation to her ownership of the property. The unchallenged findings show the following: Sorenson paid no consideration for the properties deeded to her; she orally agreed not to sell or mortgage the property or to take steps to evict Pyeatt from such properties; and, on at least one occasion, quitclaimed the Lummi Island property back to Pyeatt so that he could use the property as collateral to borrow from a lender that is not a party to this case. Then, when faced with this present action, she has asserted full-ownership rights, thereby excluding Pyeatt from exercising any incidental rights she previously accorded to him. However, if one views Sorenson's conduct post-1990, the Lenders' position becomes less meritorious.
[15] Barbara Pyeatt defaulted on the loans and, in due course, Saxon Mortgage conducted a nonjudicial foreclosure. Bankers Trust submitted the highest bid and obtained a trustee's deed on the property.
[16] The comparative innocence doctrine provides that where two innocent persons must suffer due to the fraud of a third person, the loss should fall on the "innocent" party who enabled the fraud. Stohr v. Randle, 81 Wash.2d 881, 882-83, 505 P.2d 1281 (1973).
[17] The trial court dismissed this issue concluding that the Lenders' claim under the Uniform Fraudulent Transfer Act was time-barred under RCW 19.40.091(a). RCW 19.40.091(a) provides, in essence, that a creditor's fraudulent transfer claim be brought within four years of the time the fraudulent transfer was made or the obligation was incurred. Here, the trial court determined that Ken Pyeatt's transfer of the Lummi property in 1990 was fraudulent, but that the Lenders' claims did not arise until 1997outside the four-year period provided in the statute. The Lenders argue that the trial court misapplied the applicable time frame for extinguishing their cause of action. For reasons stated herein, we do not reach the merits of that claim.